19 P.3d 640

Janice HAUSE, a resident and qualified elector of the City of Tucson, and Fernando Peyron, a resident and qualified elector of the City of Tucson, Plaintiffs/Appellants,

v.

CITY OF TUCSON, an Arizona municipal corporation, and Board of Adjustment of the City of Tucson, a municipal board of adjustment, and Walter Tellez, in his official capacity as City of Tucson Zoning Administrator, Defendants/Appellees,

and

Wal–Mart Stores, Inc., a Delaware corporation, and Consumers for Retail Choice Sponsored by Wal–Mart, a political committee registered with the Tucson City Clerk, Defendants/Real Parties in Interest/Appellees.

No. 2 CA–CV 00–0059.

Court of Appeals of Arizona, Division 2, Department B.

March 8, 2001.

**500**

Morrill & Aronson, P.L.C. by John T. Moshier, John C. Doney, Phoenix, Davis, Cowell & Bowe, LLP by Andrew J. Kahn, Joni S. Jacobs, San Francisco, California, for plaintiffs/appellants.

Gabroy, Rollman & Bossé, P.C. by Richard M. Rollman and Richard A. Brown, Tucson, for defendants/appellees.

Lewis and Roca, LLP by John N. Iurino, Tucson, for defendants/Real Parties in Interest/appellees.

## OPINION

HOWARD, Presiding Judge.

¶ 1 Shortly after appellee City of Tucson (the City) passed an ordinance regulating large retail businesses, it issued building permits to appellee Wal–Mart Stores for a store that did not comply with the ordinance. Plaintiffs/appellants Janice Hause and Fernando Peyron (collectively, Hause) filed a lawsuit claiming the permits were invalid because the ordinance was in effect when they were issued. The trial court denied Hause's request for special action relief. We affirm because the building permits were issued before the ordinance became effective and, therefore, were not governed by the ordinance.

## BACKGROUND

¶ 2 The parties stipulated to the following facts. On September 27, 1999, the City's mayor and council adopted a "Big Box" ordinance imposing restrictions on certain retail establishments with over 100, 000 square feet of floor area. On September 30, the mayor signed the ordinance, which bore an effective date of October 31. Because the signed ordinance inaccurately described the procedure the mayor and council had adopted on September 27 for approving special exceptions, it did not "fully or correctly" reflect the mayor and council's September 27 action. Therefore, on October 11, the mayor signed a corrected version of the ordinance, which bore an effective date of November 11. The correct version of the ordinance was available to the public on October 11.

¶ 3 On October 15, appellee Consumers for Retail Choice Sponsored by Wal–Mart (CFRC) applied for a referendum petition number for a referendum of the ordinance. On November 4, the City issued building permits for the construction of a Wal–Mart store that complied with Tucson Land Use Code requirements other than the Big Box

ordinance. Hause then filed this action seeking to invalidate the building permits.[1]

## DISCUSSION

¶ 4 Hause argues the Big Box ordinance became effective on October 31 and, therefore, the November 4 permits for a store that does not comply with the ordinance are invalid. But the City and Wal-Mart contend the ordinance became effective on November 11 and, therefore, did not apply to the November 4 permits. "Neither party presents any factual dispute, and we review this legal issue de novo ." *City of Tucson v. Consumers for Retail Choice Sponsored by Wal-Mart,* 197 Ariz. 600, ¶ 4, 5 P.3d 934, ¶ 4 (App.2000); *see also Herman v. City of Tucson,* 197 Ariz. 430, ¶ 5, 4 P.3d 973, ¶ 5 (App. 1999) (issues of statutory interpretation reviewed de novo).

¶ 5 A municipal ordinance does not become effective until thirty days after it is passed by the city council and approved by the mayor, absent certain exceptions not relevant here. A.R.S. ¶ 19-142(B); Tucson City Charter, Tucson Code, pt. I, ch. IX, § 8 and ch. XX, § 1; Tucson City Code § 12-75. The purpose of delaying the effective date is to allow for commencement of a referendum. *See Law v. Superior Court,* 157 Ariz. 147, 160, 755 P.2d 1135, 1148 (1988) ("[The] delay in the effective date of legislation provides ... the opportunity for mounting a referendum....."). Referendum petitions challenging an ordinance, therefore, must be filed within thirty days after the ordinance is adopted. § 19-142(A); Charter, ch. XX, § 1; Code § 12-75. And a "full and correct copy" of the measure must be attached to the referendum petition signature sheets. Ariz. Const. art. IV, pt. 1, § 1(9); A.R.S. §§ 19-112(B) and 19-121(A)(3); Code §§ 12-54 and 12-76.

¶ 6 Section 19-142(C) extends the thirty-day period for filing referendum petitions and calculating the effective date of an ordinance when a full and correct copy of the measure is not immediately available. That subsection provides:

> At the time a person or organization intending to file a referendum petition against an ordinance or resolution applies for the issuance of an official number pursuant to [A.R.S.] § 19-111, the city or town clerk shall provide such person or organization with a full and correct copy of the ordinance or resolution in the form as finally adopted. If the copy of the ordinance or resolution proposed as a referendum is not available to such person or organization at the time of making application for an official number or on the same business day as the application is submitted, the thirty-day period prescribed in subsection A of this section begins on the day that the ordinance or resolution is available from the city or town clerk, and the ordinance or resolution shall not become operative until thirty days after the ordinance or resolution is available.

¶ 7 Our supreme court considered the purpose and possible effects of this subsection in *Pioneer Trust Co. of Arizona v. Pima County,* 168 Ariz. 61, 811 P.2d 22 (1991). There, a conditional rezoning had been granted, the minutes of the board of supervisors' meeting had been approved, but the rezoning ordinance itself was not to be adopted until the conditions had been satisfied. Our supreme court concluded that the approval of the rezoning, although conditional, was a legislative act subject to referendum and that the minutes from the meeting approving the conditional rezoning constituted a copy of the "resolution" for referendum purposes. *Id.* at 64-67, 811 P.2d at 25-28. It further held that, under § 19-142(C), the thirty-day period for filing referendum petitions does not begin until a full and correct copy of the ordinance or resolution or the approved minutes is available to the public, regardless of when an individual or organization applies for an official referendum number. *Id.* at 67-68, 811 P.2d at 28-29.

---

1. Hause also challenged as untimely CFRC's referendum petition, which was submitted to the Tucson City Clerk on November 10. The city clerk ultimately rejected the petition because its content did not comply with Tucson's referendum ordinances. Because we upheld that decision, *City of Tucson v. Consumers for Retail Choice Sponsored by Wal-Mart,* 197 Ariz. 600, 5 P.3d 934 (App.2000), Hause's challenge of the referendum petition is moot.

¶ 8 Here, the parties stipulated that the September 30 version of the ordinance did not fully and correctly reflect the mayor and council's September 27 action. Hause contends, however, that the September 30 version of the ordinance merely contained "scrivener's errors" that should not delay the ordinance's effective date. But labeling the errors as scrivener's errors is not determinative. The requirement that a full and correct copy of the ordinance be attached to referendum petition signature sheets ensures that "prospective signatories have immediate access to the exact wording of the public action which is to be suspended, and possibly reversed ." *Cottonwood Dev. v. Foothills Area Coalition of Tucson, Inc.,* 134 Ariz. 46, 49, 653 P.2d 694, 697 (1982). The September 30 version of the ordinance incorrectly provided an administrative, rather than legislative, procedure for approval of retail special exception land use applications in four commercial zones, two mixed-use zones, and two industrial zones. It therefore did not contain the "exact wording of the public action," *id.,* and as the parties agree, was not a full and correct copy of the adopted ordinance. The October 11 version of the ordinance was the first full and correct copy of the mayor and council's action. Thus, under *Pioneer Trust,* the Big Box ordinance was not effective until November 11, after the November 4 building permits were issued.

¶ 9 Hause contends, however, that the legislature superseded the holding in *Pioneer Trust* when it adopted § 19–142(D) in 1999. *See* 1999 Ariz.Sess.Laws, ch. 90, § 1. Subsection (D) provides:

Notwithstanding subsection C of this section, a person or organization may file a referendum petition against the rezoning of a parcel of property on the approval by the city or town council of the ordinance that adopts the rezoning or on the approval of that portion of the minutes of the city or town council that includes the council's approval of the rezoning, whichever occurs first. The thirty day period prescribed in subsection A of this section begins on the day that the rezoning ordinance or approved minutes or portion of the approved minutes are available from the city or town clerk and the ordinance is not operative until thirty days after the ordinance or minutes are available.

¶ 10 We will not presume the legislature intended to supersede the supreme court's interpretation of § 19–142(C) unless it did so explicitly or such a conclusion is clearly required by the language or effect of the statute. *See Achen–Gardner, Inc. v. Superior Court,* 173 Ariz. 48, 54, 839 P.2d 1093, 1099 (1992) (court will not presume legislative intent to supersede or repeal prior statute "[u]nless a statute's language or effect clearly requires th[at] conclusion"); *Gibbs v. O'Malley Lumber Co.,* 177 Ariz. 342, 345, 868 P.2d 355, 358 (App.1994) (because case's holding was clear and direct, "if legislature had ever intended to change either [the statute] or the supreme court's interpretation of that statute, it would have done so explicitly, not by implication"), *disapproved of on other grounds in Jimenez v. Sears, Roebuck & Co.,* 183 Ariz. 399, 904 P.2d 861 (1995). And, when the legislature reenacts without change a statute that has been interpreted by our supreme court, we presume the legislature has adopted the supreme court's interpretation:

It is universally the rule that where a statute which has been construed by a court of last resort is reenacted in the same or substantially the same terms, the legislature is presumed to have placed its approval on the judicial interpretation given and to have adopted such construction and made it a part of the reenacted statute.

*Madrigal v. Industrial Comm'n,* 69 Ariz. 138, 144, 210 P.2d 967, 971 (1949). *See also Cagle v. Butcher,* 118 Ariz. 122, 124 n. 2, 575 P.2d 321, 323 n. 2 (1978) (same).

¶ 11 Six months after the supreme court decided *Pioneer Trust,* the governor called a special session of the legislature to consider "reforms of Arizona's laws and constitutional provisions regarding ... referendum." Proclamation of Nov. 1, 1991, 1991 Ariz.Sess.Laws, 3d Spec.Sess., v. The legislature amended § 19–142, but made no changes to § 19–142(C). 1991 Ariz.Sess. Laws, 3d Spec.Sess., ch. 1, § 22. We presume that, by reenacting § 19–142(C) with-

out change during a special session called to examine the referendum statutes, the legislature adopted our supreme court's construction of that subsection in *Pioneer Trust. Cagle; Madrigal.*

¶ 12 Furthermore, we find no indication that the legislature intended to supersede *Pioneer Trust*'s interpretation of § 19–142(C) when it enacted subsection (D) in 1999. In § 19–142(D), the legislature incorporated the holding in *Simpson v. Committee Against Unconstitutional Takings, L.L.C.,* 193 Ariz. 391, ¶ 13, 972 P.2d 1027, ¶ 13 (App. 1998), a rezoning case, in which Division One of this court, building on *Pioneer Trust,* noted the legislature's enactment of § 19–121(E),[2] and adopted the following "all-encompassing bright-line rule": "If the ordinance or resolution has been adopted, attach that to the referendum petition; in the absence of a written ordinance or resolution, attach the approved minutes." The legislature also effectively adopted the supreme court's holdings in *Pioneer Trust* that the conditional approval of a rezoning was a referable legislative act and that approval of the minutes of a meeting at which a conditional rezoning was adopted could trigger the thirty-day period for filing, applying those rules to all rezonings. *Compare* § 19–142(D) *with Pioneer Trust.* And the legislature did not indicate any displeasure with the supreme court's general interpretation of § 19–142(C), leaving that subsection substantively unchanged in the 1999 amendment. *See* 1999 Ariz.Sess.Laws, ch. 90, § 1. Rather than superseding that interpretation, the legislature approved it by twice reenacting § 19–142(C) without substantive change. *See Cagle; Madrigal.*

¶ 13 Hause further contends the phrase "[n]otwithstanding subsection C" in § 19–142(D) indicates a legislative intent to supersede the holding of *Pioneer Trust.* That phrase, however, merely indicates a legislative recognition of *Pioneer Trust*'s conclusion that a rezoning referendum must be treated differently than other referenda. In a referendum on legislative action other than rezoning, § 19–142(C) requires the clerk to provide a copy of the "ordinance or resolution" and, under *Pioneer Trust,* tolls the thirty day period until that copy is available. Consistent with *Pioneer Trust,* in a rezoning referendum § 19–142(D) allows a referendum to be commenced when either the ordinance is adopted or the relevant portion of the minutes is approved and begins the thirty-day period when either the ordinance or minutes become available. The term "notwithstanding," therefore, does not indicate any legislative intent to supersede *Pioneer Trust.*

¶ 14 Moreover, we do not find, as Hause suggests, that § 19–142(D) is rendered superfluous if we continue to apply the supreme court's interpretation of § 19–142(C) and also give effect to § 19–121(E). As discussed above, § 19–142(D) applies to a referendum directed against a rezoning and § 19–142(C) applies to any other referendum. Therefore, they apply in different situations. Further, § 19–142(D) allows minutes to evidence the legislative act in rezoning cases, but § 19–142(C) makes no similar provision in other types of referenda.[3] And § 19–121(E), read in light of the addition of § 19–142(D), makes the requirements for attachments to referendum petitions consistent with the provisions in § 19–142 which begin and toll the thirty-day period. Once the event beginning the thirty-day period as prescribed in § 19–142 occurs, the referendum petition is required to include a copy of the proper evidence of the legislative act as allowed by § 19–121(E).

¶ 15 In fact, the legislative history to which Hause has directed us supports this interpretation. Members of the public supported the addition of § 19–142(D) because it was "inten[ded] ... to make technical changes in order to achieve uniformity in the current law" and because it "codifie[d] existing law."

---

2. Section 19–121(E) provides that the "measure" to be attached to a referendum petition means "the adopted ordinance or resolution or, in the absence of a written ordinance or resolution, that portion of the minutes" reflecting the legislative act.

3. We are not presented today with the issue of whether in any contexts other than rezoning the minutes may constitute the evidence of the legislative act subject to referendum.

**504**

Corporate Income Tax Rate; Consignments: Hearing on S.B.1298 Before the House Committee on Ways and Means, 44th Legis., 1st Reg.Sess. (Ariz.1999) (statements of Phil Hubbard, Director of Intergovernmental Affairs, City of Peoria, and Steve Kemp, City Attorney, City of Peoria). *But see City of Tucson v. Consumers for Retail Choice Sponsored by Wal–Mart,* 197 Ariz. 600, ¶ 14, 5 P.3d 934, ¶ 14 (little weight given to nonlegislators' statements). Our interpretation of § 19–142(D) provides for a uniform thirty-day tolling period from the triggering event in rezoning and in other types of referenda. Different tolling periods could lead to confusion and to an elector unwittingly forfeiting the right to refer a matter to the people. We conclude, therefore, that § 19–142(D) is not superfluous and that § 19–142(C), as interpreted by *Pioneer Trust,* continues to apply in non-rezoning cases.

 ¶ 16 Hause also contends that the time extension in § 19–142(C) only applies when a full and correct copy of the ordinance is not available on the date a challenger files an application for a referendum number. She argues that § 19–142(C) is therefore inapplicable here because a full and correct copy of the ordinance was available when CFRC filed an application for a referendum number on October 15. In *Pioneer Trust,* our supreme court noted that the identical argument had "a patina of technical merit," but rejected it. 168 Ariz. at 68, 811 P.2d at 29. This court cannot "overrule, modify, or disregard" supreme court precedent. *City of Phoenix v. Leroy's Liquors, Inc.,* 177 Ariz. 375, 378, 868 P.2d 958, 961 (App.1993). We therefore reject this argument, as well as Hause's request that "the holding of *Pioneer Trust* ... be reconsidered and overruled." Such requests should be directed to the supreme court, not this court. *Leroy's Liquors,* 177 Ariz. at 378, 868 P.2d at 961.

¶ 17 Finally, although Hause raises the specter of ordinances not becoming effective and remaining referable for years and decades after their enactment, such a case is not before us. Here, the error was discovered and corrected shortly after the ordinance was first executed, well within thirty days after it was initially passed. And, we have found no published cases either before or after *Pioneer Trust* challenging the effective date of an ordinance that had allegedly been inaccurately recorded years before. Furthermore, if any such dire consequences could occur, they would be a direct result of the holding in *Pioneer Trust,* by which we are bound.

## CONCLUSION

¶ 18 The November 4 building permits were issued fewer than thirty days after a full and correct copy of the Big Box ordinance was available to the public. The permits, therefore, were issued before the effective date of the ordinance, were not required to comply with the ordinance, and are valid. The trial court's order is affirmed.

DRUKE and FLÓREZ, JJ., concur.

