51 P.3d 342

**ROBSON RANCH MOUNTAINS, L.L. C., a Delaware limited liability company; FVR Land Investment Company, an Arizona corporation, Plaintiffs/Appellants,**

v.

**PINAL COUNTY, a body politic; Gilbert Hoyos, in his official capacity as Pinal County Director of Elections; Laura Dean–Lytle, in her official capacity as Pinal County Recorder, Defendants/Appellees,**

**Pinal Citizens for Sustainable Communities, Inc., an Arizona corporation, Intervenor/Appellee.**

**Anam, Inc., an Arizona corporation; Elaine Helzer, a citizen and qualified elector of Pinal County, Plaintiffs/Appellants,**

v.

**Pinal County, a body politic; Gilbert Hoyos, in his official capacity as Pinal County Director of Elections; Laura Dean–Lytle, in her official capacity as Pinal County Recorder, Defendants/Appellees,**

**Pinal Citizens for Sustainable Communities, Inc., an Arizona corporation, Intervenor/Appellee.**

No. 2 CA–CV 2002–0054,
2 CA–CV 2002–0060.

Court of Appeals of Arizona.
Division Two, Department B.

July 18, 2002.

Review Denied Oct. 4, 2002.

Fennemore Craig, By Andrew M. Federhar and Theresa Dwyer, Phoenix, for Plaintiffs/Appellants Robson Ranch Mountains, L.L.C., and FVR Land Investment Company.

Snell & Wilmer, L.L.P., By Marc G. Simon, Jeffrey Willis, and Wade R. Swanson, Tucson, for Plaintiffs/Appellants Anam, Inc., and Elaine Helzer.

Robert Carter Olson, Pinal County Attorney, By William H. McLean, Florence, for Defendants/Appellees.

Raven & Awerkamp, P.C., By Anne C. Graham–Bergin, Tucson, for Intervenor/Appellee.

*OPINION*

PELANDER, J.

¶ 1 In these two consolidated appeals, plaintiffs/appellants Robson Ranch Mountains, L.L.C., and FVR Land Investment Company (collectively, Robson) in case number CV 2002–0054 and plaintiffs/appellants Anam, Inc., and Elaine Helzer (collectively, Anam) in case number CV 2002–0060 appeal from the trial court's rulings denying their requests for declaratory and injunctive relief against placing two referenda, both initiated by intervenor/appellee Pinal Citizens for Sustainable Communities, Inc. (PCSC), on the November 2002 general election ballot. The referenda challenge several rezoning and development-related ordinances enacted by the Pinal County Board of Supervisors (the Board). These cases were consolidated on appeal because they present two identical legal issues:

1. For purposes of A.R.S. § 19–142, when does the thirty-day time period commence for filing a referendum petition that challenges a county rezoning ordinance: when the ordinance is enacted and executed by a county board of supervisors or, only later, when a county's elections director obtains the ordinance and provides it to the referendum applicant?

2. When, as here, the county adopts two separate but related ordinances, one of which rezones property and the other of which approves a specific planned area development (PAD) overlay for the rezoned property, may both ordinances be challenged in a single referendum petition without violating the so-called "single measure" rule? *See* Ariz. Const. art. IV, pt. 1, § 1(9); A.R.S. § 19–101(A); *cf. Korte v. Bayless,* 199 Ariz. 173, 16 P.3d 200 (2001).

¶ 2 We conclude that the PCSC referendum petitions were untimely filed and, therefore, are void. Accordingly, we vacate the trial court's rulings on that basis and direct entry of judgment for Robson and Anam on their complaints. In view of this disposition, we do not address the second issue.

**BACKGROUND**

**I. The Robson Case (No. CV 2002–0054)**

¶ 3 The parties in this case stipulated to the pertinent facts. In February 2000, Robson applied to rezone 2, 528 acres of land from general rural to various other classifications to permit higher density residential development and a golf-oriented, adult master-planned resort community known as Saddle-Brooke Ranch. In a separate application, Robson requested a PAD overlay for the property, essentially seeking the county's approval of Robson's specific, intended development plan and of several requested zoning variances. After a public hearing in August 2000, the county's Planning and Zoning Commission recommended approval of the requested rezoning and Robson's proposed PAD.

¶ 4 On November 1, 2000, the Board heard the Commission's recommendations and public comment on the proposed rezoning and PAD. The Board unanimously approved both the rezoning and PAD by enacting Ordinance Nos. PZ–033–00 and PZ–PD–033–00. Immediately after the hearing, the Board and its clerk executed the official version of each ordinance.

¶ 5 PCSC sponsored a single referendum petition on both ordinances. On November 2, a PCSC representative telephoned the Pinal County Director of Elections, Gilbert Hoyos, informing him that PCSC intended to refer the SaddleBrooke rezoning to a public vote and asking him when the materials for circulation would be available. After several inquiries and attempts by PCSC representatives over the next few days to obtain the "materials for circulation" from Hoyos, his office first provided PCSC a packet of materials, including the two ordinances, on November 7. On that same day, PCSC filed an application with Hoyos that resulted in the issuance to PCSC of a single referendum petition with an official serial number. In a

space labeled "FOR OFFICE USE ONLY" on the application, Hoyos inserted December 4, 2000, as the filing deadline for the petition.

¶ 6 After circulating the petition and obtaining approximately 5,880 signatures, PCSC submitted the petition sheets to Hoyos on December 4, 2000. In January 2001, the Pinal County recorder determined that the petitions contained an adequate number of valid signatures.

¶ 7 In October 2001, Robson filed this action against the county, requesting the trial court to enjoin placement of PCSC's referendum on the November 2002 general election ballot and to declare PCSC's referendum petition void as a matter of law. Pursuant to stipulation, PCSC intervened in the action. Robson moved for summary judgment, contending that PCSC unlawfully had referred two ordinances in a single referendum petition and that the petition had been untimely filed in violation of § 19–142. The trial court denied Robson's motions and ultimately denied Robson relief on the merits. This appeal followed.

## II. The Anam Case (No. CV 2002–0060)

¶ 8 Viewed in the light most favorable to sustaining the trial court's ruling, *Sabino Town & Country Estates Ass'n v. Carr,* 186 Ariz. 146, 148–49, 920 P.2d 26, 28–29 (App. 1996), the pertinent facts in this action are as follows. Around October 2000, Anam, the owner and leaseholder of land known as Willow Springs Ranch in Pinal County, applied to rezone some of its property. PCSC opposed the rezoning plan. After Anam scaled down its proposed project, the Pinal County Planning and Zoning Commission approved the rezoning request and Anam's proposed PAD and forwarded the recommendation to the Board.

¶ 9 At a scheduled meeting and public hearing on May 16, 2001, over PCSC's opposition, the Board unanimously approved the revised rezoning of approximately 4,600 acres of the Willow Springs Ranch property by enacting and executing two ordinances, one for the rezoning (PZ–006–01) and the other for the PAD overlay for that property (PZ–PD–006–01). The parties stipulated that copies of both ordinances were immediately available from the clerk of the Board on May 16 and that PCSC never requested them from the clerk.

¶ 10 On May 16, PCSC applied to Hoyos, the county's Director of Elections, for a petition to refer the ordinances for a public vote. Although Hoyos gave PCSC representatives a synopsis of the law relating to referendum petitions and a specific petition serial number, Hoyos told PCSC he could not provide the "materials for circulation" with the petition because of his belief, ultimately determined to be erroneous, that the official minutes of the Board's May 16 meeting also had to be attached to any petition. A week later, Hoyos told a PCSC representative that the "materials for circulation" were still not available.

¶ 11 At its next scheduled meeting on May 30, the Board approved the minutes of the May 16 meeting. On May 30, a PCSC representative had several telephone conversations with Hoyos, who checked but stated the materials still were not available. The next day, PCSC obtained from Hoyos copies of the two ordinances and the approved minutes of the May 16 Board meeting. Hoyos calculated and wrote July 2, 2001, as the filing deadline for the petition in a box labeled "FOR OFFICE USE ONLY" on PCSC's previously submitted application for a referendum serial number. PCSC attached both the ordinances and minutes to its petition, which PCSC then circulated from June 1 through July 2. On Monday, July 2, PCSC filed with Hoyos its petition sheets that contained approximately 5,870 signatures.

¶ 12 Over Anam's protest on July 12 that PCSC's petition had been untimely filed, the county processed and certified the petition. Anam then filed this action against the county for declaratory and injunctive relief. As in the Robson case, PCSC intervened in the action pursuant to stipulation. After denying Anam's motion for summary judgment and conducting a brief bench trial, the trial court denied Anam's requested relief. This appeal followed. We have jurisdiction over both appeals, which we have expedited pursuant to Rule 3, Ariz. R. Civ.App. P., 17B A.R.S. *See* A.R.S. § 12–120.21(A)(1); *Perini Land*

& *Dev. Co. v. Pima County,* 170 Ariz. 380, 382, 825 P.2d 1, 3 (1992).

## DISCUSSION

¶ 13 Our review in this case is de novo because the trial court's rulings hinge on "mixed questions of law and fact and pure questions of law, including matters of statutory interpretation and constitutional issues." *In re United States Currency of $26,980.00,* 193 Ariz. 427, ¶ 5, 973 P.2d 1184, ¶ 5 (App. 1998). "When construing statutes, our foremost goal is to effectuate the legislature's intent." *State v. Huskie,* 202 Ariz. 283, ¶ 5, 44 P.3d 161, ¶ 5 (App.2002). If the statutory language is clear and unambiguous, we look no further. *Id.* "But if the statutory language is ambiguous, we consider other factors, including 'the statute's context, subject matter, historical background, effects, consequences, spirit, and purpose.'" *Id., quoting Hobson v. Mid–Century Ins. Co.,* 199 Ariz. 525, ¶ 8, 19 P.3d 1241, ¶ 8 (App.2001). We also seek to harmonize related statutory provisions and "aim to achieve consistency among them" in the context of the overall statutory scheme. *Bills v. Arizona Property & Cas. Ins. Guar. Fund,* 194 Ariz. 488, ¶ 18, 984 P.2d 574, ¶ 18 (App.1999).

¶ 14 In both of these cases, the trial court rejected appellants' contentions that PCSC had untimely filed its referendum petitions. The propriety of those rulings hinges largely on analysis of § 19–142. That statute, labeled "Referendum petitions against municipal actions; emergency measures; zoning actions," provides in pertinent part:

A. ... The [referendum] petition [against an ordinance, franchise or resolution] shall be filed with the city or town clerk within thirty days after passage of the ordinance, resolution or franchise.

. . . .

C. At the time a person or organization intending to file a referendum petition against an ordinance or resolution applies for the issuance of an official number pursuant to § 19–111, the city or town clerk shall provide such person or organization with a full and correct copy of the ordinance or resolution in the form as finally adopted. If the copy of the ordinance or resolution proposed as a referendum is not available to such person or organization at the time of making application for an official number or on the same business day as the application is submitted, the thirty-day period prescribed in subsection A of this section begins on the day that the ordinance or resolution is available from the city or town clerk, and the ordinance or resolution shall not become operative until thirty days after the ordinance or resolution is available.

D. Notwithstanding subsection C of this section, a person or organization may file a referendum petition against the rezoning of a parcel of property on the approval by the city or town council of the ordinance that adopts the rezoning or on the approval of that portion of the minutes of the city or town council that includes the council's approval of the rezoning, whichever occurs first. The thirty day period prescribed in subsection A of this section begins on the day that the rezoning ordinance or approved minutes or portion of the approved minutes are available from the city or town clerk and the ordinance is not operative until thirty days after the ordinance or minutes are available.

¶ 15 Although the title of § 19–142 refers only to "municipal actions" and subsections (A), (C), and (D) only mention the "city or town clerk," the statute applies to county legislative matters as well. *State v. Oakley,* 180 Ariz. 34, 37, 881 P.2d 366, 369 (App.1994). *See also Pioneer Trust Co. v. Pima County,* 168 Ariz. 61, 67–68, 811 P.2d 22, 28–29 (1991). As pertinent to these cases, under either subsection (C) or (D), the thirty-day period prescribed in subsection (A) commences when the rezoning ordinance is "available" to referendum applicants. The problem is that neither subsection (C) nor (D) specifies the *county* official from whom the rezoning ordinance must be "available" before the thirty-day period begins for filing the referendum petition. Because the plain wording of § 19–142 does not clearly and unambiguously resolve that issue, we turn to other factors in an effort to give meaning and effect to the statute as it applies to counties. *See Huskie; Bills.*

¶16 Citing *Hause v. City of Tucson*, 199 Ariz. 499, 19 P.3d 640 (App.2001), Robson and Anam contend that only subsection (D) applies to rezoning referenda and governs the time frame within which such referenda petitions must be filed. They further contend that the time for filing a referendum petition on a county rezoning ordinance begins when the ordinance or the minutes approving the ordinance (whichever is earlier) are available from the clerk of the Board. As Anam argues, "because the Clerk of the Board, at the county level, serves in the same capacity as a city or town clerk at the municipal level, the Clerk of the Board is precisely the official to whom [ (D) ] directs persons interested in acquiring a copy of an ordinance."

¶17 Robson asserts that the SaddleBrooke rezoning and PAD ordinances were available from the clerk of the Board on November 1, 2000, immediately after the Board enacted and executed those ordinances. Robson also points out that the ordinances were recorded on November 3. Thus, Robson argues, PCSC's filing of its referendum petition on December 4 was untimely, having occurred more than thirty days after the ordinances were "available" under § 19–142(D).

¶18 Anam's argument parallels Robson's. Because the Willow Springs Ranch rezoning and PAD ordinances that PCSC sought to refer were adopted, signed, and available on May 16, 2001, Anam contends the deadline for filing PCSC's referendum petition was June 15, 2001. Because the petition was not filed until July 2, Anam argues, it was untimely and, therefore, void.

¶19 In contrast, relying primarily on A.R.S. § 19–141(A), PCSC contends, and the trial court ruled, that the thirty-day period for filing referendum petitions against a county ordinance does not commence unless

and until the ordinance to be referred is available from the "county officer in charge of elections."[1] § 19–141(A). That statute provides in pertinent part:

> The provisions of this chapter shall apply to the legislation of cities, towns and counties, except as specifically provided to the contrary in this article. The duties required of the secretary of state as to state legislation shall be performed in connection with such legislation by the city or town clerk, county officer in charge of elections or person performing the duties as such.

¶20 Based on the second sentence of that statute, PCSC asserts, and the trial court ruled, that the thirty-day period for filing the referendum petitions began only when the ordinances were available to, that is, actually in the hands of Hoyos, the "county officer in charge of elections." § 19–141(A). In the Robson case, Hoyos did not obtain the SaddleBrooke ordinances and give them to PCSC until November 7, 2000. Therefore, PCSC argues and the trial court expressly ruled, the filing of PCSC's petition on December 4 was timely. PCSC likewise argues in the Anam case that, because Hoyos did not obtain the Willow Springs Ranch ordinances and give them to PCSC until May 31, 2001, PCSC timely filed its petition on Monday, July 2. The trial court implicitly agreed, ruling that "the referendum should occur."[2]

¶21 In concluding that PCSC's referendum petitions had been timely filed, the trial court stated in both cases that "[t]he duties which are to be performed in connection with legislation are to be done in Pinal County by the county officer in charge of elections" and that a qualified voter "may rely on the statements of the county officer in charge of elections, of the availability or lack of avail-

1. Noting that "strong arguments" support both sides on the timeliness issue, the county appellees have chosen to remain neutral on that issue. According to them, they "have no stake in the outcome of this issue" and will "accept any additional guidance this court can provide for making these decisions in the future."

2. Citing various acts and omissions by Hoyos and the lack of "ill will by the County," the trial court in the Anam case further concluded that

PCSC's filing its petition on Monday, July 2, 2001, was timely because the thirtieth day after May 31, when Hoyos had first secured the Willow Springs Ranch ordinances and the approved minutes of the Board's May 16 meeting and had furnished them to PCSC, fell on Saturday, June 30. We do not address the propriety of that ruling because it is not pertinent to our disposition.

ability of such ordinances." The court further ruled:

> The issue is a simple one which is established by law. *When* is [the ordinance] "available" in the most fundamental way to the "county officer in charge of elections?" If that officer cannot get a copy of it to duplicate and hand out, it is unavailable. This is not a matter of the elections director handing out advice. This is a statement of fact by that Director which is undisputed. Gilbert Hoyos, as Director of Elections for Pinal County, could not get his hands on this ordinance. It was unavailable to him.
>
> This statutory structure to the process removes uncertainty. If the legislature did not mean for the "county officer in charge of elections" to perform these duties, they would not have named that officer. The reason for the unavailability of these combined ordinances is irrelevant. It is undisputed and the Court finds as a matter of fact that these ordinances were not available to the county officer in charge of elections for Pinal County. This in turn made them unavailable to the public for referendum. In Pinal County, Gilbert Hoyos is the county officer in charge of elections and is the individual to whom qualified voters make application for referendums [sic]. In this case as a matter of fact, that official did not have available these ordinances *on the day* the petition [application] was filed. As a result, the ordinances could not be operative until 30 days after [those] ordinance[s were] available.

¶ 22 We disagree with PCSC's and the trial court's interpretation of the pertinent statutes and, consequently, the court's ultimate ruling. First, PCSC's reliance on § 19–142(C) is misplaced. As this court stated in *Hause:*

> In a referendum on legislative action other than rezoning, § 19–142(C) requires the clerk to provide a copy of the "ordinance or resolution" and, under *Pioneer Trust,* tolls the thirty day period until that copy is available. Consistent with *Pioneer Trust,* in a rezoning referendum § 19–142(D) allows a referendum to be commenced ...

when either the ordinance or minutes become available. . . .

> ... As discussed above, § 19–142(D) applies to a referendum directed against a rezoning and § 19–142(C) applies to any other referendum. Therefore, they apply in different situations.

199 Ariz. 499, ¶¶ 13–14, 19 P.3d 640, ¶¶ 13–14; *see also id.* at ¶ 15 (section 19–142(C) "continues to apply in non-rezoning cases"). The court in *Hause* further noted that the phrase " '[n]otwithstanding subsection C' " in § 19–142(D) "indicates a legislative recognition of *Pioneer Trust*'s conclusion that a rezoning referendum must be treated differently [from] other referenda." *Id.* at ¶ 13.

¶ 23 As PCSC correctly points out, *Hause* neither addressed any "availability" issues nor involved any questions about the proper party from whom a copy of a referable ordinance should be sought and obtained. Nonetheless, we concur with the foregoing statements in *Hause,* even if they are deemed dicta. We now hold that § 19–142(D), not § 19–142(C), controls the calculation and commencement of the time period within which a referendum petition on a county rezoning ordinance must be filed.

¶ 24 The trial court incorrectly equated the reference to "city or town clerk" in § 19–142(D) with the county's director of elections for purposes of determining the availability of the ordinances in question. The court's reliance on § 19–141(A) for that conclusion was misplaced. With respect to municipal or county legislation and referenda relating thereto, that statute merely obligates the "city or town clerk, county officer in charge of elections or person performing the duties as such" to perform "[t]he duties required of the secretary of state as to state legislation." § 19–141(A). But PCSC does not cite any law that places an affirmative duty on the secretary of state to provide copies of legislation to be referred to individuals who apply for and later file a referendum petition. Under Arizona law, duly enacted state legislation is filed with the secretary of state, who is required to "make such acts available to interested persons." Ariz. Const. art. V, § 7; A.R.S. § 41–121(7). And, with respect to county ordi-

nances, the "person performing [those] duties as such" is the county's clerk of the board, not the county's elections director.

¶ 25 The clerk of the board is required to "[r]ecord all proceedings of the board," A.R.S. § 11–241(1), and to "maintain and permanently preserve the official copy of the minutes." A.R.S. § 11–217(B). In addition, A.R.S. § 11–221 provides that "[t]he books, records and accounts of the board shall be kept at the office of the clerk of the board, and in his care, and shall be open to public inspection." *See also* A.R.S. §§ 39–101, 39–121, 39–121.01 (county board must maintain all public records reasonably necessary or appropriate to provide knowledge of its official activities and must make such records open for inspection and copying). These statutes do not require or authorize the delegation of those duties to a county's elections director. And the law provides recourse and remedies for those whose efforts to examine or copy public records might be thwarted. A.R.S. § 39–121.02.

¶ 26 In contrast, as the evidence in both cases showed and the trial court found, the Pinal County elections director's responsibilities include issuing, accepting, and processing referendum petitions. *See* § 19–141(A). *But cf.* Ariz. Const. art. IV, pt. 1, § 1(9) (referendum petitions on county measures "shall be addressed ... to the clerk of the Board of Supervisors"). And that is entirely consistent with § 19–141(A), in that the duties of the secretary of state with respect to state legislative referenda include those same functions. *See, e.g.,* Ariz. Const. art. IV, pt. 1, § 1(4), (9); A.R.S. §§ 19–111; 19–121(B), (C), (D); 19–121.01 through 19–121.05. Contrary to the trial court's rulings, the duties of the "county officer in charge of elections" pursuant to § 19–141(A) do not "necessarily then include [all of] those [duties] that are set forth in A.R.S. § 19–142."

¶ 27 In sum, neither § 19–141(A) nor § 19–142 imposes the duties of the clerk of the board to maintain and provide public access of records for referenda on the county elections director. And, although § 19–142(C) and (D) do not specify the particular county official from whom a rezoning ordinance must be "available" before the thirty-day countdown begins, the clerk of the board, not the county elections director, is the most logical person in view of those officials' separate duties.

¶ 28 Contrary to PCSC's argument, § 19–142 does not necessarily or always envision "a 'one stop' location for submitting a petition application, receiving petition materials and for returning petitions for processing." In cities and counties in which one person wears several hats, including that of clerk and elections director, PCSC's "one stop" assertion holds true. But when, as in Pinal County, several public officials have different, perhaps overlapping, statutory roles and obligations relating to the referendum process, a proponent may have to interact with more than one office. That does not "place an undue burden on the constitutional right to circulate a referendum petition," as PCSC asserts, particularly when, as here, the offices of the county clerk and elections director apparently are in the same building.

¶ 29 Thus, even if both § 19–142(C) and (D) arguably apply to certain referenda procedures on rezoning measures, a county elections director has no legal duty to obtain or provide to the applicant "a full and correct copy of the ordinance or resolution in the form as finally adopted." § 19–142(C). Although that county official may do so, he or she has no such obligation, and his failure to do so does not necessarily render the ordinance unavailable for purposes of § 19–142(C) or (D) or otherwise toll the thirty-day period under § 19–142(A).

¶ 30 As a matter of law, we find untenable PCSC's argument and the trial court's ruling that a duly enacted and executed county ordinance is not available for purposes of § 19–142(C) and (D) unless and until the county elections director obtains a copy of the ordinance and provides it to referendum applicants. The ordinances in question were legally available from the clerk of the Board upon their enactment. *See State v. Mitro,* 700 So.2d 643, 646 (Fla.1997), *quoting Webster's Collegiate Dictionary* 79 (10th ed.1994) (term "available" generally "is defined as 'accessible, obtainable'"); *cf.*

*Northern Operating Corp. v. Town of Ramapo,* 26 N.Y.2d 404, 311 N.Y.S.2d 286, 259 N.E.2d 723, 726 (1970) (ordinance on file in clerk's office is available to public).

■ ¶ 31 "Referendum proponents must file their completed petitions within 30 days after enactment of the county ordinance to be referred." *Perini Land & Dev. Co.,* 170 Ariz. at 384 n. 3, 825 P.2d at 5 n. 3. But, Arizona law does not absolutely guarantee referendum proponents a full thirty days to circulate and file a petition. Rather, the law requires the petition to be filed *"within* thirty days after passage of the ordinance." § 19–142(A) (emphasis supplied). As for referendum petitions against county rezoning ordinances, that thirty-day period "begins on the day that the rezoning ordinance or approved minutes ... are available." § 19–142(D). Ultimately, it is the applicant's obligation, not that of a county official, such as Hoyos, who has no statutory duties relating to maintaining, inspecting, or copying ordinances, to promptly seek and obtain the necessary attachments to a referendum petition and to timely file the petition. *Cf. Cottonwood Dev. v. Foothills Area Coalition of Tucson, Inc.,* 134 Ariz. 46, 49, 653 P.2d 694, 697 (1982) (obligation to satisfy requirements concerning attachments to petition rests solely on referendum proponent).

¶ 32 Moreover, the trial court's rulings undermine the well-established principle in Arizona that referendum proponents must "comply strictly with applicable constitutional and statutory provisions" because "the referendum is an 'extraordinary' power, *Direct Sellers [Ass'n v. McBrayer,* 109 Ariz. 3, 5, 503 P.2d 951, 953 (1972) ], that permits a 'minority to hold up the effective date of legislation which may well represent the wishes of the majority.'" *Western Devcor, Inc. v. City of Scottsdale,* 168 Ariz. 426, 429, 814 P.2d 767, 770 (1991), *quoting Cottonwood Dev.,* 134 Ariz. at 49, 653 P.2d at 697. *See also Lawrence v. Jones,* 199 Ariz. 446, ¶¶ 7–8, 18 P.3d 1245, ¶¶ 7–8 (App.2001) (although "constitutional right to referendum is to be broadly construed," referendum petition must strictly comply with all applicable statutory requirements); *Simpson v. Committee Against Unconstitutional Takings, L.L.C.,* 193 Ariz. 391,

¶ 9, 972 P.2d 1027, ¶ 9 (App.1998). Extending by several additional days (in Robson) and weeks (in Anam) the time period allowed by law for filing referendum petitions under the circumstances presented here violates that principle.

¶ 33 In addition, the trial court's rulings unnecessarily inject both confusion and lack of uniformity in this area of the law. *See Pioneer Trust Co.,* 168 Ariz. at 66, 811 P.2d at 27 (noting importance of establishing, when possible, "a bright-line rule easily ascertainable by all interested parties" for referendum petitions); *cf. Simpson,* 193 Ariz. 391, ¶ 12, 972 P.2d 1027, ¶ 12 (noting importance of avoiding "litigation-generating ambiguities" in referendum process when possible). Far from "remov[ing] uncertainty," as the trial court noted, its rulings actually produce just the opposite effect. As Anam correctly points out, "the prospect of material disputes as to 'who said what' and 'who gave what to whom' leads to ridiculous results in referenda challenges, particularly when, as in this case, it is undisputed that a zoning hearing took place, ordinances were adopted at that meeting, and those ordinances were available to the public on that same day."

■ ¶ 34 We also agree with Robson that various detrimental effects would result if we were to adopt the trial court's rulings that the county elections director, not the clerk of the board, controls commencement of the thirty-day time period:

> First, it places the start of the strictly construed thirty-day period in the hands of an unelected official whose duties are not defined by statute. Second, it impermissibly expands the responsibilities of the officer in charge of elections beyond those of the Secretary of State under Chapter 1, Title 19 in a comparable statewide election. Finally, it necessarily enlarges the statutory period for a vague, unspecified time because unlike county clerks, the particular methods and procedures for county elections directors are not established by statute and vary from county to county. In effect, the trial court's decision would result in confusion and a lack of certainty and uniformity in the referendum process.

We reject PCSC's contention that the deadline for filing a referendum petition on a county rezoning ordinance should be a "movable," non-"fixed date," depending on when "the materials for circulation are available from the appropriate local official in charge of elections."[3] In our view, objective criteria, not the subjective and fluid criteria PCSC urges, should govern the issue of availability for purposes of § 19–142(D). The trial court's rulings give rise to unpredictability and risk manipulation of the referendum process.

¶ 35 Contrary to the trial court's clearly erroneous finding in the Anam case that the Willow Springs Ranch ordinances "were not available to [Hoyos] at the time [PCSC's] application was initially submitted" on May 16, the undisputed facts established that the ordinances were available to Hoyos, PCSC, and the general public on that date.[4] Hoyos merely testified that he had believed that he could not give PCSC the "materials for circulation" until May 31, 2001, apparently based on his incorrect assumption that the minutes of the Board's May 16 meeting, as approved on May 30, had to be attached to PCSC's petition. The applicable statutes, however, clearly do not require attachment of the minutes to the referendum petition when, as here, the ordinance itself is first available. *See* §§ 19–121(E), 19–142(D); *see also Hause*, 199 Ariz. 499, ¶ 13, 19 P.3d 640, ¶ 13; *Simpson*, 193 Ariz. 391, ¶ 13, 972 P.2d 1027, ¶ 13.

¶ 36 Similarly, the trial court's finding in the Robson case that the SaddleBrooke ordinances were not available to Hoyos and, therefore, to PCSC until November 7, 2000, does not survive scrutiny. The county appellees admitted below that the enacted ordinances had been immediately available upon their passage on November 1. The trial court erred in concluding that Robson could not "rest on the answer of [the] County" on that point, particularly in the absence of any evidence that Hoyos, PCSC, or the general public could not have obtained copies of the SaddleBrooke ordinances from the clerk of the Board on November 1.[5] *See* Ariz. R. Civ. P. 8(b), 8(d), 16 A.R.S., Pt. 1; *Schwartz v. Schwerin*, 85 Ariz. 242, 249, 336 P.2d 144, 148 (1959).

¶ 37 Finally, that PCSC supposedly "went to great lengths to obtain the materials for circulation from numerous county officials," as it asserts, does not change the result. PCSC's assorted actions, inquiries, and receipt of questionable information from various county officials concerning the availability of the "materials for circulation" did not delay the commencement or running of the thirty-day period prescribed in § 19–142. Nor did Hoyos's insertion of a date in the box labeled "FOR OFFICE USE ONLY" on PCSC's applications extend the deadline for filing the petitions. "The time for filing a referendum petition is not subject to equitable tolling." *De Szendeffy v. Threadgill*, 178 Ariz. 464, 466, 874 P.2d 1021, 1023 (App.1994). Rather, "the referendum power must be exercised 'within a limited time or the legislation goes into effect.'" *Id.*, quoting *Direct Sellers Ass'n*, 109 Ariz. at 5, 503 P.2d at 953. "[R]eliance on a form does not excuse noncompliance." *De Szendeffy*, 178 Ariz. at 465 n. 1, 874 P.2d at 1022 n. 1.

¶ 38 Contrary to the trial court's rulings, a referendum proponent may not rely with impunity "on the statements of the county officer in charge of elections, of the availability or lack of availability of [the] ordinances" to be referred. A referendum applicant's receipt of or reliance on inaccurate advice from a county elections director does not extend the time period for filing the petition or otherwise excuse noncompliance with the statutory requirements. *See Perini Land & Dev. Co.* (county election director's inaccurate advice about number of signatures needed to place referendum on ballot did not

---

**3.** At oral argument in this court, the county expressed its preference for a finite, fixed time period within which referendum petitions on rezoning measures must be filed.

**4.** We also note that, one day later, on May 17, resolutions that evidenced the Board's approval and execution of the ordinances were recorded in the Pinal County recorder's office.

**5.** Both SaddleBrooke ordinances also were recorded with the Pinal County recorder's office on November 3, 2000.

excuse or justify filing petition with insufficient number of valid signatures).

## DISPOSITION

¶ 39 The trial court's rulings in both cases are vacated. And, because PCSC's referendum petitions in both cases were untimely filed and are void, we direct entry of judgment in favor of Robson and Anam on their complaints. In our discretion, we deny Anam's request for an award of attorney's fees in both the trial court and on appeal pursuant to the private attorney general doctrine. *See Defenders of Wildlife v. Hull,* 199 Ariz. 411, ¶ 65, 18 P.3d 722, ¶ 65 (App.2001).

DRUKE, P.J., and FLÓREZ, J., concur.