IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | |
|---|---|
| FIDELITY NATIONAL TITLE COMPANY, INC., as Trustee, and not in its corporate capacity, under Trust Nos. 30, 199 and 60,104,<br><br>Plaintiff/Appellant,<br><br>v.<br><br>TOWN OF MARANA, a municipal corporation, and JOCELYN BRONSON, in her capacity of Town Clerk;<br><br>Defendants/Appellees,<br><br>CAROLYN E. NESSINGER,<br><br>Intervenor/Appellee. | 2 CA-CV 2008-0189<br>DEPARTMENT B<br><br>O P I N I O N |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20082776

Honorable John E. Davis, Judge

REVERSED AND REMANDED

Stubbs & Schubart, P.C.
  By G. Lawrence Schubart and Jeffrey H. Greenberg                    Tucson
                                                Attorneys for Plaintiff/Appellant

Frank Cassidy, Marana Town Attorney
  By Cedric Hay                                                                Marana

    and

Arizona Center for Law in the Public Interest
  By Joy E. Herr-Cardillo                                                       Tucson
                                                                  Attorneys for
                                                          Defendants/Appellees

---

E C K E R S T R O M, Presiding Judge.

¶1       In this expedited election appeal pursuant to Rule 8.1, Ariz. R. Civ. App. P., appellant Fidelity National Title Company has appealed from the trial court's entry of summary judgment and dismissal of its special action complaint against appellees the Town of Marana and Carolyn Nessinger.  Fidelity argues the trial court disregarded the bright-line rule set forth in Arizona law defining the event that triggers the running of the thirty-day period to challenge a rezoning ordinance by referendum.  Because we agree that the court erred in its application of the law, we reverse the grant of summary judgment, remand the case, and direct the trial court to grant summary judgment in favor of Fidelity.

¶2       The parties stipulated to the following facts.  On October 2, 2007, the Town of Marana approved Ordinance 2007.27, which changed the zoning on a parcel of land owned by Fidelity subject to certain conditions being met.  The ordinance provided, in relevant part:

> This Ordinance shall be treated as having been adopted and the
> 30-day referendum period established by Arizona Revised

2

Statutes section ("A.R.S. §") 19-142(D) shall begin when the Town files with the county recorder an instrument (in a form acceptable to the Town Attorney), executed by the Developer and any other party having any title interest in the Rezoning Area, that waives any potential claims against the Town under the Arizona Property Rights Protection Act (A.R.S. § 12-1131 *et seq.*, and specifically A.R.S. § 12-1134) resulting from changes in the land use laws that apply to the Rezoning Area as a result of the Town's adoption of this Ordinance. If this waiver instrument is not recorded within 90 calendar days after the motion approving this Ordinance, this Ordinance shall be void and of no force and effect.

The ordinance became available to the public on October 5, 2007.

¶3           Soon thereafter, Nessinger obtained a referendum petition for the ordinance from the town clerk. The petition stated the deadline for filing it was November 8, 2007. Later, the Town, through the clerk, contacted Nessinger and advised her the ordinance had not yet become effective because the property owner had not recorded the waiver. The Town assured Nessinger it would contact her after the waiver was recorded and would provide her an amended referendum petition. The Town then contacted Nessinger on November 8, 2007, informed her the waiver had been recorded, and told her an amended referendum petition was available. The amended referendum petition she obtained from the town clerk provided that the deadline for filing it was Monday, December 10, 2007. Nessinger filed the petition on that date. The Town accepted the referendum petition as timely filed and, on January 2, 2008, certified that it contained enough signatures to refer the ordinance to the voters.

¶4           Fidelity challenged the timeliness of the petition in a complaint for special action relief filed in Pima County Superior Court on April 25, 2008, requesting that the court

3

order the Town "to cease the processing of the Referendum Petition, including the scheduling of an election on the Referendum Petition." The parties stipulated to the relevant facts and each moved for summary judgment. The trial court denied Fidelity's motion and granted summary judgment against it. The court entered final judgment on December 1, 2008, and this appeal followed.

¶5 When reviewing the grant of summary judgment in a case in which the parties have stipulated to the relevant facts, we review de novo the trial court's application of the law. *Canady v. Prescott Canyon Estates Homeowners Ass'n*, 204 Ariz. 91, ¶ 6, 60 P.3d 231, 232 (App. 2002). The Arizona Constitution provides that the legislative actions of a town are subject to the referendum process. *See* Ariz. Const. art. IV, pt. 1, § 1(8). But referendum proponents must strictly comply with all constitutional and statutory requirements. *Feldmeier v. Watson*, 211 Ariz. 444, ¶ 12, 123 P.3d 180, 183 (2005).

¶6 Fidelity argues that Nessinger and the Town failed to comply strictly with the timeliness requirements set forth in § 19-142(D) for challenging the ordinance by referendum. Specifically, it contends the event that triggered the time for challenging the ordinance by referendum was the town council's approval of the ordinance on October 2, 2007. The trial court disagreed, ruling instead that the fulfillment of the Town's condition for adopting the ordinance—the recording of a waiver by the applicant for the ordinance thirty days later—triggered the time frame for filing a referendum petition.

4

¶7        In *Pioneer Trust Co. v. Pima County*, 168 Ariz. 61, 66-69, 811 P.2d 22, 27-30 (1991), our supreme court addressed a nearly identical dispute. There, it held that the initial approval of a condition-laden ordinance triggered the time governing the filing of referendum petitions. *Id.* The court reasoned that "the logical and practical time for a referendum is when the rezoning is conditionally approved[,] . . . shortly after the contested proceedings and public hearings." *Id.* at 66, 811 P.2d at 27. The court further noted:

> Adopting the time of conditional rezoning as the triggering time for a referendum also provides a bright-line rule easily ascertainable by all interested parties. If enactment of the final zoning ordinance were the triggering mechanism, parties would be required to make repeated checks to determine whether the [legislative body] has enacted the final zoning ordinance. Thus, practical as well as legal considerations lead us to conclude that conditional approval of rezoning is a referable legislative act.

*Id.*

¶8        In 1999, consistent with the holding in *Pioneer Trust*, our state legislature enacted § 19-142(D). *See* 1999 Ariz. Sess. Laws, ch. 90, § 1; *Hause v. City of Tucson*, 199 Ariz. 499, ¶¶ 12-13, 19 P.3d 640, 644 (App. 2001). The subsection provides that, when challenging a rezoning by referendum, the challenger may file a petition "on the approval by the city or town council of the ordinance that adopts the rezoning or on the approval of that portion of the minutes of the city or town council that includes the council's approval of the rezoning, whichever occurs first." § 19-142(D). And, the thirty-day period within which to

5

challenge the rezoning begins on the day that the ordinance or approved minutes are available from the town clerk. § 19-142(A), (D).

¶9 Thus, both our legislature and supreme court have made clear that the subsequent adoption of a rezoning ordinance is not the triggering event for purposes of the right of referendum. The Town's attempt here to circumvent that clear mandate by delaying the *adoption* of the ordinance therefore had no effect on the statutory triggering event—the *approval* of the ordinance. For that reason, we agree with Fidelity that the time for challenging the ordinance by referendum began running on October 5, 2007, and the petitions Nessinger filed over sixty days later were untimely.

¶10 In ruling otherwise, the trial court distinguished *Pioneer Trust*, finding the ordinance at issue here "included language indicating that it would not take effect until there was compliance with the mandate of Proposition 207. That was an integral part of the ordinance, and not a list of conditions as occurred in *Pioneer Trust*." But the trial court overlooked the fact that, regardless of the form of the pre-condition to adoption or the importance of that pre-condition to the Town, the Town approved the ordinance at the October 2 meeting and a copy of the ordinance was available on October 5. And, as the language of § 19-142(D) and the holding of *Pioneer Trust* require, it is the approval of the ordinance rather than the specified effective date of the ordinance that triggers the time limit to challenge the legislative act.

¶11 The Town emphasizes that the language of its ordinance, which specified its

6

adoption date and the date from which the right to file a referendum petition would run, fulfilled the public policy goal set forth in *Pioneer Trust*—to clarify for the public and the rezoning applicant the triggering event for any challenge. And, we would be reluctant to fault citizens for relying to their detriment on the very terms set forth in the ordinance when timing their challenge to it. But, we can find no language in § 19-142(D) suggesting that our legislature intended to endow our state's subdivisions with the power to specify different triggering events than those the legislature itself set forth in the statute.

¶12      Importantly, the triggering events set forth in § 19-142(D) are subject to public notice requirements and are the products of formal legislative acts.[1] Thus, they are "easily ascertainable by all interested parties," *Pioneer Trust*, 168 Ariz. at 66, 811 P.2d at 27, while the triggering event the Town established in the ordinance came with no alert to the citizenry and could occur at any time. This practical consideration was one of the factors leading the court in *Pioneer Trust* to adopt "the time of conditional zoning as the triggering time for a referendum." *Id.* There, the court noted that "[i]f enactment of the final zoning ordinance were the triggering mechanism, parties would be required to make repeated checks to determine whether the Board has enacted the final zoning ordinance." *Id.* We therefore are

---

[1]*See* A.R.S. § 38-431.01(A) (meetings of public bodies must be open to the public and all legal action must occur at such meetings); A.R.S. § 38-431.02 (public must be given notice of meetings); *see also* § 38-431.01(B), (D) (public bodies must keep written minutes or recordings of all meetings; minutes or recording shall be made available for public inspection three working days after meeting).

not persuaded the Town's ordinance served to clarify the triggering event for a referendum challenge.

¶13 We also find little logic in the Town's implicit suggestion that, as a matter of public policy, the very legislative bodies that have approved an ordinance should be empowered to determine the conditions for challenging it. To the contrary, public policy favors uniformity in the referral process—uniformity the statutory framework was intended to provide. *See* A.R.S. § 19-141(A) ("The provisions of this chapter shall apply to the legislation of cities, towns and counties, except as specifically provided to the contrary in this article.").

¶14 Indeed, this case illustrates the harsh consequences that can occur when the statutory framework is not followed. Although Nessinger initially obtained the referendum petition at the correct time—immediately after the town council's approval of the ordinance—she was subsequently advised by the town clerk that she needed to wait until the ordinance had formally been adopted before she could secure an amended petition and begin circulating it for signatures.[2] Thus, Nessinger and those citizens who sought to challenge the

---

[2]In their appellate brief and at oral argument, the Town and Nessinger attempted to raise the affirmative defenses of laches, estoppel, and waiver. But because those defenses were neither specifically pled nor raised in a timely fashion to the trial court, we do not address the arguments for the first time on appeal. *See Hegel v. O'Malley Ins. Co.*, 122 Ariz. 52, 56, 593 P.2d 275, 279 (1979) (affirmative defenses must be pled and proven by defendant or waived); *cf. Magma Copper Co. v. Indus. Comm'n*, 139 Ariz. 38, 48-49, 676 P.2d 1096, 1106-07 (1983) (to properly raise affirmative defense party must give sufficient notice to allow opposing party to produce evidence on the issue).

8

ordinance have lost their opportunity to do so because they relied to their detriment on the erroneous advice of a government official who purported to have both the knowledge and the duty to direct them. But, it is the challenger's responsibility to comply with the statutory requirements for filing a referendum petition, and the receipt of erroneous advice, even from governmental officials responsible for administering the referendum process, does not excuse that responsibility. *See Robson Ranch Mtns., L.L.C. v. Pinal County*, 203 Ariz. 120, ¶ 38, 51 P.3d 342, 352 (App. 2002) ("A referendum applicant's receipt of or reliance on inaccurate advice from a county elections director does not extend the time period for filing the petition or otherwise excuse noncompliance with the statutory requirements."); *accord Perini Land and Dev. Co. v. Pima County*, 170 Ariz. 380, 381, 384, 825 P.2d 1, 2, 5 (1992) (although issue not addressed directly, erroneous advice from county elections director about referendum signatures did not excuse noncompliance).

¶15        We are well aware that, as this case and others like it demonstrate, seemingly straightforward statutory requirements for pursuing a referendum are at times mystifying to all but the most sophisticated legal specialists. *See, e.g.*, *Pioneer Trust*, 168 Ariz. at 64-66, 811 P.2d at 25-27 (referendum challenged on ground proponents misidentified relevant legislative action in context of complex county rules for approval and adoption of ordinance); *Robson Ranch*, 203 Ariz. 120, ¶¶ 17, 38, 51 P.3d at 348, 352 (petition filed one day late because thirty-day deadline ran from when ordinance was available from town clerk, not when made available by elections director; referendum invalidated even though referendum

9

proponents "went to great lengths" to obtain correct materials for circulation and relied on questionable information from various county officials); *Perini Land and Dev. Co.*, 170 Ariz. at 381, 384, 825 P.2d at 2, 5 (referendum invalidated when proponents filed 20,065 valid signatures, after elections director calculated that proponents needed only 17,167 signatures based on population at time of election prior to circulation of petition, but election occurring between dates for circulating and filing petitions changed requisite number to 20,148); *Grosvenor Holdings L.C. v. City of Peoria*, 195 Ariz. 137, ¶¶ 14-15, 985 P.2d 622, 626 (App. 1999) (referendum invalidated as untimely by split appellate panel, when proponents believed referable act was adoption of more specific ordinance following more general, and less articulate, earlier approval; but criticizing "heads we win, tails you lose" advantage enjoyed by referendum opponents).[3]  However, our state's experience, as reflected in this case and those cited above, suggests that the procedural complexities of the legislative process and the presumptive cost of obtaining legal counsel in order to successfully navigate the statutory requirements for referendum in that context would become all the more complex and burdensome were public bodies throughout the state empowered to deviate from the statutory referral process as the Town suggests.  Nessinger's experience, as one who tried to abide by the letter of the statutory requirements, is but one example.

---

[3]Included in Fidelity's challenge to the validity of the referendum petition, and the briefing to this court, was the alternative contention that the petitions were arguably submitted two days late when the thirtieth day of the deadline fell on a weekend, and Nessinger filed the petitions on the first day the clerk's office was open thereafter.  We need not address this contention in light of our resolution of the case on other grounds.

¶16 For the foregoing reasons, we reverse the grant of summary judgment in favor of the Town and Nessinger and remand the case to the trial court, which is directed to enter summary judgment in favor of Fidelity.

¶17 Fidelity argues it is entitled to its reasonable attorney fees incurred in the trial court pursuant to A.R.S. § 12-2030, which provides that reasonable fees shall be awarded when a party prevails against a town in a mandamus-type action. Fidelity has now prevailed. Therefore, upon remand, the trial court is directed to entertain Fidelity's request for attorney fees incurred in the trial court and to enter an award accordingly.[4] We reject Fidelity's request for attorney fees on appeal because it has failed to separately articulate an appropriate statutory basis for that request. *See Bed Mart, Inc. v. Kelley*, 202 Ariz. 370, ¶ 24, 45 P.3d 1219, 1224 (App. 2002) (request for appellate fees under Rule 21(c), Ariz. R. Civ. App. P., insufficient, as rule "does not provide a substantive basis for a fee award"); *see also W. Sun*

---

[4]The Town relies on *Fleischman v. Protect Our City*, 214 Ariz. 406, 153 P.3d 1035 (2007), to argue Fidelity is not entitled to attorney fees because "there is no statutory basis for its request." In *Fleischman*, a referendum case, the supreme court held that the challengers were not entitled to their attorney fees on appeal because they contested the clerk's certification under A.R.S. § 19-121.03(B), rather than bringing a mandamus action to compel the clerk to perform a certification. *Fleishman*, 214 Ariz. 406, ¶ 26, 153 P.3d at 1039. Here, Fidelity asked the trial court to order the clerk "to cease the processing of the Referendum Petition, including the scheduling of an election on the Referendum Petition," pursuant to Rule 3(a), Ariz. R. P. Spec. Actions, which replaced the old writ of mandamus. *See* Ariz. R. P. Spec. Actions 1(a); *Home Builders Ass'n of Central Ariz. v. City of Apache Junction*, 198 Ariz. 493, ¶ 31, 11 P.3d 1032, 1042 (App. 2000). Thus, *Fleischman* does not control this issue.

*Contractors Co. v. Superior Court*, 159 Ariz. 223, 232, 766 P.2d 96, 105 (App. 1988)

(refusing to award appellate attorney fees under § 12-2030 when not timely requested).

_____
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:


_____
J. WILLIAM BRAMMER, JR., Judge


_____
GARYE L. VÁSQUEZ, Judge