993 P.2d 1114

**Daniel H. ISRAEL, Plaintiff–Appellant,**

v.

**TOWN OF CAVE CREEK, a municipal corporation; and Cheryl L. Witt, in her capacity as Town Clerk, Defendants–Appellees.**

No. 1 CA–CV 97–0535.

Court of Appeals of Arizona,
Division 1, Department B.

Aug. 5, 1999.

Morrill & Aronson by John T. Moshier, Mathias G. Bildhauer, Phoenix, Attorneys for Plaintiff-Appellant.

Newmark Irvine, P.A. by Thomas K. Irvine and Ellen M. Van Riper, and Lewis and Roca, LLP by Richard A. Halloran, Phoenix, Attorneys for Defendants-Appellees.

## OPINION

FIDEL, Judge.

¶ 1 Through a series of ordinances, the Mayor and Town Council of the Town of Cave Creek undertook to annex land lying north of the town limits. The plaintiff, wishing to subject the annexation to a referendum, awaited the passage of the final ordinance before initiating the referendum process. The Town denied him a referendum petition serial number, maintaining that

the last ordinance was merely an administrative conclusion to the annexation and that plaintiff had waited too long to challenge the first ordinance, assertedly the referable "legislative act." On cross-motions for summary judgment, the superior court sustained the Town's position and entered judgment for the Town. Finding the Town and the superior court mistaken, we reverse.

¶ 2 Three questions are presented, which we summarize and answer as follows:

1. Which was the referable legislative act: (a) the ordinance that directed the Town Manager to initiate the annexation process and schedule a public hearing on the subject, or (b) the final approval of the annexation after the process had been completed and the public hearing held? *The latter.*

2. May a Town insulate an annexation from a referendum by enacting it with an emergency clause? *No.*

3. Was plaintiff's application for a referendum serial number fatally deficient because he failed to identify an organization on behalf of which he acted? *The trial court must resolve this question on remand, for the present record does not permit it to be resolved by summary judgment.*

### BACKGROUND

¶ 3 On January 9, 1997, the Town Council passed Resolution 97–01, which directed the Town Manager to initiate the annexation of land to the north side of the Town. To commence an annexation process, a municipality must file a blank petition and a map and legal description of the territory to be annexed in the County Recorder's Office. *See* Ariz.Rev.Stat. Ann. (A.R.S.) § 9–471(A)(1). Resolution 97–01 directed the Town Manager to meet these statutory requirements.

¶ 4 After filing the blank petition, the municipality must wait thirty days before obtaining signatures on copies of the petition. *See* A.R.S. § 9–471(A)(2). During this thirty-day waiting period, the municipality must schedule a public hearing "to discuss the annexation proposal." A.R.S. § 9–471(A)(3).[1]

---

1. Subsequent to the annexation process now at issue, A.R.S. § 9–471 was amended to require

that the hearing be held within "the last ten

In compliance with this requirement, Resolution 97–01 directed the Town Manager to schedule a public hearing on January 27, 1997. The Council minutes of January 27, 1997, reflect that the Council conducted such a hearing, that the Town Manager opened the hearing by "present[ing] a brief summary of the proposed annexation," and that thirteen citizens addressed the subject in a discussion that lasted for approximately two hours.

¶ 5 After the passage of the thirty-day waiting period from the filing of the blank petition, a municipality that undertakes an annexation has one year within which to obtain the requisite signatures from property owners within the area proposed to be annexed. *See* A.R.S. § 9–471(A)(4).[2] The first day for Cave Creek to collect such signatures was February 13, 1997. At a meeting on that date, the Council launched the signature-gathering process by approving a form of annexation agreement to be entered by the Town with each willing owner within the designated area. The agreement recited the Town's "intention to annex [the] area," the Town's "desire[ ] to encourage the Annexation," and assurances of the Town's intentions concerning the area that it proposed to annex. The agreement also contained the Town's promise to submit an annexation petition to each owner for signature; the owner's responding promise, "[a]s soon as practical after receipt ... [to] execute and deliver a valid annexation petition to the Town"; and the Town's promise that, after receiving the signed petitions, it would continue its best efforts to accomplish the annexation.

¶ 6 At the same meeting, the Council passed Ordinance 97–03, "setting forth the general policy" under which the annexation would proceed. This ordinance, in language consistent with assurances specified in the annexation agreement, set forth the Town's post-annexation intentions with respect to matters such as zoning, treatment of nonconforming uses and unpermitted structures, protection of rural desert ranch uses, and the improvement of a road.

¶ 7 On April 24, 1997, with the adoption of Ordinance 97–08, the Mayor and Town Council formally annexed the area in question. The ordinance recited that the Town had obtained petitions signed by the requisite number of property owners and that the requirements of A.R.S. § 9–471 had been fully observed. In an emergency clause, the Town declared that, in order to accomplish budgeting and provide Town services, it was "necessary ... for the preservation of the peace, health and safety of the Town" that the ordinance become "effective immediately upon its passage and adoption."

¶ 8 On May 1, 1997, plaintiff applied to the Town for a referendum petition serial number for a referendum of Ordinance 97–08. He submitted his application as an individual and did not purport to act on behalf of any organization. The Town refused to issue plaintiff a referendum serial number.

¶ 9 Plaintiff filed a special action complaint in superior court, seeking a *writ of mandamus* to compel the Town to issue him a referendum petition serial number. The parties submitted cross-motions for summary judgment, addressing each of the three issues we have outlined above. The trial court granted the Town's motion and denied plaintiff's motion. It ruled that Resolution 97–01 was the legislative act that was subject to a referendum. Finding that plaintiff had sought a petition with respect to the wrong act, the court did not reach the other arguments. Plaintiff has filed a timely appeal from the judgment in favor of the Town.

## LEGISLATIVE ACT

■ ¶ 10 The Arizona Constitution reserves to qualified electors the power to refer to a vote of the people the "legislative actions" of their state and municipal representatives. Ariz. Const. art. 4, pt. 1, § 1(3); *Wennerstrom v. City of Mesa*, 169 Ariz. 485, 488, 821 P.2d 146, 149 (1991). Plaintiff ar-

---

days" of the waiting period. 1997 Ariz. Sess. Laws Ch. 204, § 1.

**2.** A.R.S. § 9–471(A)(4) specifically requires the petition to be "signed by the owners of one-half or more in value of the real and personal proper-ty and more than one-half of the persons owning real and personal property that would be subject to taxation by the city or town in the event of annexation."

gues that, in the unfolding of the Cave Creek annexation, Ordinance 97–08 was the referable, legislative act; the Town contends that the legislative act was Resolution 97–01. The timeliness of plaintiff's referendum application turns on our determination of this point.[3]

¶ 11 The Town bases its argument primarily on *Pioneer Trust Co. v. Pima County*, 168 Ariz. 61, 811 P.2d 22 (1991). There, the Pima County Board of Supervisors had exercised its statutory authority to approve a "conditional zoning change." *See* A.R.S. § 11–832.[4] Enactment of the final rezoning ordinance awaited documentation that " 'all conditions have been satisfied.' " *Pioneer Trust*, 168 Ariz. at 65, 811 P.2d at 26 (quoting Pima County Zoning Code § 18.91.090(A)(1)). When challengers sought a referendum on the approval of conditional rezoning, the Board asserted that the referendum was premature and should abide the final ordinance. The supreme court disagreed, finding the approval of conditional rezoning a referable, legislative act.

¶ 12 Explaining its decision, the *Pioneer Trust* court observed that when the Board approved conditional rezoning, "realistically, . . . the decision had been made. . . . Determining compliance with the conditions and enacting the formal ordinance are both essentially ministerial acts that implement the policy previously set by the Board." *Id.*

¶ 13 The Town claims that this case is comparable to *Pioneer.* It analogizes Resolution 97–01, which directed the Town Manager to initiate the annexation process, to Pima County's approval of conditional rezoning, asserting that here as there, the remaining steps were merely ministerial. This argument, however, places among the supposedly ministerial steps the statutorily mandatory step of conducting a public hearing—a point of critical distinction between this case and *Pioneer Trust.*

¶ 14 It was significant to the *Pioneer Trust* decision that a grant of conditional rezoning comes "*after* . . . public hearings," *id.* at 66, 811 P.2d at 27 (emphasis added), and that a board, once having granted conditional rezoning, "cannot add to or modify those conditions . . . without holding new public hearings." *Id.* at 65, 811 P.2d at 26. The grant of conditional zoning was thus a "final decision" in which the Pima County Board had circumscribed its authority. *Wennerstrom*, 169 Ariz. at 491, 821 P.2d at 152.

¶ 15 The annexation process is altogether different. The annexation statute repeatedly distinguishes a "proposed" from a "final" annexation, and the Cave Creek annexation was decidedly at the proposed, not the final, stage with the passage of Resolution 97–01.[5] Before reaching the stage of finality, a town proposing annexation must satisfy a series of statutory requirements designed to assure public participation and support. One of these requirements is to conduct a public hearing. *See* A.R.S. § 9–471(A)(3). Not only did the Town have yet to satisfy the hearing requirement when it enacted Resolution 97–01; a very purpose of Resolution 97–01 was to direct the Town Manager to schedule the necessary hearing. It is evident from the structure of A.R.S. § 9–471 that an annexation proposal cannot be deemed a final legislative act before the mandatory public hearing has been held. We do not believe that the legislature was indulging in window dressing when it required such a proposal to be presented at a public hearing; nor do we believe that a

---

3. A referendum petition must be filed "within thirty days after passage of the ordinance, resolution or franchise" that the petitioner seeks to refer. A.R.S. § 19–142(A). Plaintiff filed his petition on May 1, 1997, within thirty days of the April 24 passage of Ordinance 97–08, but more than thirty days after the January 9 passage of Resolution 97–01.

4. A.R.S. § 11–832, entitled "Conditional zoning change; board approval; reversion," authorizes zoning boards to "approve a change of zone conditioned on a schedule for development of the

specific use or uses for which rezoning is requested."

5. *See, e.g.*, A.R.S. § 9–471(B) (mandating public access to all filings "regarding a proposed or final annexation"); § 9–471(A)(1) (blank petition and map to be filed with recorder "of the county in which the annexation is proposed"); § 9–471(A)(3) (requiring public hearing "to discuss the annexation proposal"); § 9–471(A)(3)(a) (specifying forms of notice to be given to residents and property owners in "the territory proposed to be annexed").

municipality proposing annexation may treat the solicitation of public input as a merely ministerial follow-up to an already final act.

¶ 16 Indeed, the public hearing is itself only a preliminary step in the statutory process leading from proposal to finality; the municipality must next obtain a defined and substantial level of support among property owners within the territory to be annexed. *See* A.R.S. § 9–471(A)(2)–(4). We may infer that the legislature does not regard this requirement as perfunctory, for it has allocated thirteen months from the filing of the blank petition for its completion. *Id.* Without the requisite level of property owner support, finality cannot be achieved. *Id.*

¶ 17 In summary, after examining the statutory annexation process and contrasting the conditional zoning process considered in *Pioneer Trust,* we conclude that the trial court erred in holding Resolution 97–01 to be a final, referable legislative act. Resolution 97–01 was, rather, a preliminary step in a process whose subsequent completion depended upon the solicitation and achievement of public support. Cave Creek did not complete that process and did not make the proposed annexation a final annexation until the passage of Ordinance 97–08. As plaintiff filed his referendum application within thirty days of the passage of that ordinance, we hold his application timely, and we reverse the trial court's contrary decision.

### EMERGENCY CLAUSE

¶ 18 We next consider whether summary judgment for the Town may be affirmed on the alternative ground that the emergency clause of Ordinance 97–08 shields the ordinance from a referendum.

¶ 19 Emergency clauses, when permitted, render ordinances, resolutions, and other legislative acts immediately effective. Section 19–142(B) authorizes municipalities to enact emergency ordinances only when they are "necessary for the immediate preservation of the peace, health or safety of the

city or town." A.R.S. § 19–142(B). Ordinances not containing an emergency clause are inoperative for thirty days after their enactment. *See id.*

¶ 20 In *Salt River Project v. City of St. Johns,* 149 Ariz. 282, 285, 718 P.2d 184, 187 (1986), the Arizona Supreme Court held unequivocally that "[a] municipality cannot enact an annexation statute as an emergency measure." The court found that A.R.S. § 19–142(B), a general enactment, is superseded in matters of annexation by the specific statutes A.R.S. § 9–471(C) and (D), which make annexation ordinances final only after the expiration of thirty days.[6]

¶ 21 The Town acknowledges, as it must, that pursuant to *St. Johns,* "cities cannot avoid A.R.S. § 9–471 by enacting annexation measures as emergency measures." The Town points out, however, that *St. Johns* did not concern a referendum. The Town then seeks to demonstrate on constitutional grounds that an emergency measure may be invalid to bar a challenge to the validity of an annexation under § 9–471(C) and yet valid to bar a referendum. The Town bases this argument on art. 4, pt. 1, § 1, ¶¶ 3 & 8 of the Arizona Constitution, under which referenda may be submitted except as to laws or ordinances "immediately necessary for the preservation of the public peace, health, or safety." The Town presents art. 4, pt. 1, in effect, as a source of unfettered municipal discretion to enact ordinances as emergency measures—a discretion to be read as an implicit, constitutionally mandatory exception to any statute such as A.R.S. § 9–471(D) that purports to impose a fixed waiting period before an ordinance takes effect.

¶ 22 We find this argument unpersuasive. The purpose of art. 4, pt. 1 is to reserve the power to the people to refer a legislative enactment to a popular vote. *See Wennerstrom,* 169 Ariz. at 488, 821 P.2d at 149. Its purpose is not to extend municipalities the unconstrained use of emergency dec-

---

**6.** Pursuant to A.R.S. § 9–471(D), an annexation "shall become final after the expiration of thirty days from the adoption of the ordinance annexing the territory by the city or town governing body." Pursuant to A.R.S. § 9–471(C), "[a]ny

city or town, the attorney general, the county attorney, or any other interested party may upon verified petition move to question the validity of the annexation" within those thirty days.

larations to insulate their ordinances from popular vote. *Cf. Pioneer Trust,* 168 Ariz. at 66, 811 P.2d at 27 ("legislative review *by the people* [is] an action that the Arizona Constitution and statutes strongly encourage"). Municipal annexation power, like other municipal powers, is entirely derivative of legislative grant. *See City of Scottsdale v. Superior Ct.,* 103 Ariz. 204, 205, 439 P.2d 290, 291 (1968) (a municipality has only those powers explicitly granted by the legislature). In a statute repeatedly solicitous of public participation, our legislature has subjected the municipal annexation power to the possibility of popular challenge through the proviso that annexation ordinances are not final until "after the expiration of thirty days." A.R.S. § 9–471(D). Our supreme court has determined that A.R.S. § 9–471(D) "precludes a city from giving immediate effect to an annexation ordinance by invoking its power to enact emergency ordinances." *St. Johns,* 149 Ariz. at 283, 718 P.2d at 185. The statute and case law are unequivocal, and they unequivocally defeat the strained contrary argument of the Town.

¶ 23 In summary, the emergency clause of Ordinance 97–08 is invalid; it does not insulate the ordinance from plaintiff's effort to refer the ordinance to a popular vote.

### ORGANIZATIONAL AFFILIATION

¶ 24 Section 19–111(A) requires the filer of a referendum application to list his name and the name of any organization that he represents. *See* A.R.S. § 19–111(A). Plaintiff filed as an individual and did not list an organizational affiliation. The Town argued to the trial court that plaintiff, in fact, represents an organization named Spur Cross Ranch and that his failure to list that affiliation renders his application statutorily invalid.[7]

¶ 25 Whether plaintiff filed on behalf of Spur Cross Ranch or solely on his own behalf is a material issue of fact that cannot be resolved by summary judgment. Thus, we

remand to the trial court for a determination of this issue. *See Orme Sch. v. Reeves,* 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990) (existence of genuine issues of material fact preclude summary judgment).

### CONCLUSION

¶ 26 We hold as matters of law that Ordinance 97–08 was the referable legislative act, that its emergency clause was ineffective to insulate the ordinance from referendum, and that plaintiff's referendum application was timely. We remand the factual question whether plaintiff's application was deficient for failure to identify a material organizational affiliation.

CONCURRING: JON W. THOMPSON, Presiding Judge, and EDWARD C. VOSS, Judge.

---

7. We note that a failure to make a required organizational listing does not, strictly speaking, invalidate an application under A.R.S. § 19–111(A). Instead, pursuant to A.R.S. § 19–114(B), it invalidates any signatures obtained on referendum petitions circulated pursuant to an insufficient application. The effect, however, is the same, for it renders an insufficient application a futility.