SUPREME COURT OF ARIZONA
In Division

ANN-EVE PEDERSEN, individually )    Arizona Supreme Court
and as Chair of the Quality       )    No.  CV-12-0260-AP/EL
Education and Jobs Supporting     )
I-16-2012 Committee; and the      )    Maricopa County
Quality Education and Jobs        )    Superior Court
Supporting I-6-2012 Committee,    )    No.  CV2012-009618
                                  )
         Plaintiffs/Appellees,    )
                                  )
              v.                  )    **O P I N I O N**
                                  )
KEN BENNETT, in his official      )
capacity as Secretary of State    )
of the State of Arizona,          )
                                  )
         Defendant/Appellant.     )
_____   )

Appeal from the Superior Court in Maricopa County
The Honorable Robert H. Oberbillig, Judge

**AFFIRMED**

_____

HARALSON, MILLER, PITT, FELDMAN, & MCANALLY, P.L.C.       Tucson
     By    Stanley G. Feldman

And

ARIZONA CENTER FOR LAW IN THE PUBLIC INTEREST            Phoenix
     By    Timothy M. Hogan
           Joy E. Herr-Cardillo

And

LEWIS AND ROCA, L.L.P.                                   Phoenix
     By    Kimberly A. Demarchi

And

KNAPP & ROBERTS, P.C.                                  Scottsdale
     By    David L. Abney

And

BUTLER, ODEN, & JACKSON, P.C.                                    Tucson
        By   G. Todd Jackson
Attorneys for Ann-Eve Pedersen and
Quality Education and Jobs Supporting
I-16-2012 Committee

BALLARD SPAHR, L.L.P.                                            Phoenix
        By   Joseph A. Kanefield
             Craig C. Hoffman
             Brunn W. Roysden, III

And

THOMAS C. HORNE, ARIZONA ATTORNEY GENERAL                       Phoenix
        By   Michele L. Forney, Assistant Attorney General
             Thomas M. Collins, Assistant Attorney General
Attorneys for Ken Bennett

WILLIAM G. MONTGOMERY, MARICOPA COUNTY ATTORNEY                 Phoenix
        By   M. Colleen Connor, Deputy County Attorney
             Bruce P. White, Deputy County Attorney
Attorneys for Amici Curiae
Helen Purcell and Karen Osborne

LASOTA & PETERS, P.L.C.                                         Phoenix
        By   Donald M. Peters
Attorneys for Amicus Curiae
The Friends of ASBA, Inc.

SNELL & WILMER, L.L.P.                                          Phoenix
        By   Barbara J. Dawson
             Martha E. Gibbs
             Michael T. Liburdi
Attorneys for Amici Curiae
Arizona Tax Research Association and
Arizona Free Enterprise Club

ARIZONA EDUCATION ASSOCIATION                                  Phoenix
        By   Samantha E. Blevins
Attorneys for Amici Curiae
Jack Sawyer, Wendy Effing, and Linda Somo

PERKINS COIE, L.L.P.                                          Phoenix
    By   Paul F. Eckstein
         D. Andrew Gaona
Attorneys for Amici Curiae
We Build Arizona

ARIZONA STATE SENATE                                          Phoenix
    By   Gregrey G. Jernigan

And

ARIZONA HOUSE OF REPRESENTATIVES                             Phoenix
    By   Peter A. Gentala
Attorneys for Amici Curiae
Steve Pierce and Andrew M. Tobin

LEWIS AND ROCA, L.L.P.                                         Tucson
    By   John C. Hinderaker
         Sarah L. Mayhew
Attorneys for Amicus Curiae
Southern Arizona Leadership Council

_____

**B E R C H**, Chief Justice

**¶1** On August 14, 2012, this Court issued an order affirming the superior court's judgment that the submittal of two versions of an initiative, one of which was subsequently circulated for signatures, did not warrant excluding the initiative from the ballot. This opinion explains our order.

## I. FACTS AND PROCEDURAL HISTORY

**¶2** Ann-Eve Pedersen and the Quality Education and Jobs Supporting I-16-2012 Committee (collectively, the "Committee") support an initiative called the Quality Education and Jobs Act, which would permanently dedicate a one-cent sales tax to fund public education, infrastructure projects, and other public

services. In applying for a serial number for the initiative, the Committee inadvertently submitted to Secretary of State Ken Bennett two differing versions of the proposed law: a full version on a compact disc ("CD") and a paper version that omitted fifteen lines of text on page twelve of fifteen single-spaced pages. The omitted lines transfer, subject to limits, "remaining monies" to entities that receive money under other subsections of the initiative. The full "CD version" was circulated with the petition sheets.

¶3        Secretary Bennett's office posted a scanned copy of the paper version of the initiative on its website. Between March 9, 2012, and June 25, 2012, 278 visitors accessed the paper version on the website. During this time, the Committee posted the CD version on its website and attached that version to the petitions circulated for signature. More than 290,000 voters signed petitions to place the initiative on the November 2012 ballot, and the Committee tendered these signatures to the Secretary of State's Office for validation.

¶4        The Secretary of State's Office accepted the petitions and issued a receipt, but then notified the Committee that the initiative failed to qualify for the ballot because "the signature pages [were] not attached to a full and correct copy of the initiative measure filed with [the Secretary of State's] office." Because the Secretary of State's Office deemed the

paper copy filed with that office the official version of the initiative, it concluded that the CD version circulated with the signature sheets did not match the official paper version, rendering all of the signature sheets invalid.

¶5     The Committee immediately applied for a writ of mandamus. *See* A.R.S. § 19-122(A) (Supp. 2011).   The superior court found that the Secretary of State's Office acted arbitrarily in rejecting the initiative.   The Secretary appealed under A.R.S. § 19-122(A) (permitting direct appeal to supreme court).

## II.  DISCUSSION

¶6     We review de novo the questions of statutory and constitutional interpretation raised in this appeal.  *See, e.g.,* *Ross v. Bennett*, 228 Ariz. 174, 176 ¶ 6, 265 P.3d 356, 358 (2011).

### A.  Compliance with Constitutional and Statutory Requirements

¶7     The Arizona Constitution reserves to the people the power to propose laws through the initiative process.   Ariz. Const. art. 4, pt. 1, § 1(1), (2).   Arizona has a strong policy supporting the people's exercise of this power.   *See, e.g.,* *Feldmeier v. Watson*, 211 Ariz. 444, 447 ¶ 11, 123 P.3d 180, 183 (2005) (citing *W. Devcor, Inc. v. City of Scottsdale*, 168 Ariz. 426, 428, 814 P.2d 767, 769 (1991)).   For that reason, courts

- 5 -

liberally construe initiative requirements and do not interfere with the people's right to initiate laws "unless the Constitution expressly and explicitly makes any departure [from initiative filing requirements] fatal." *Kromko v. Superior Court*, 168 Ariz. 51, 58, 811 P.2d 12, 19 (1991) (internal quotation marks and citations omitted); *see also* 1989 Ariz. Sess. Laws, ch. 10, § 1 (requiring liberal interpretation of initiatives so as not to "destroy the presumption of validity").

**¶8**     The Arizona Constitution requires attachment of "a full and correct copy of the title and text" of an initiative to "[e]ach sheet containing petitioners' signatures." Ariz. Const. art. 4, pt. 1, § 1(9); *see also* A.R.S. § 19-121(A)(3) (Supp. 2011) (requiring the same). The parties agree that the Committee attached its intended version, "the full text of the proposed [i]nitiative, exactly as it appeared on the compact disc supplied with the application," to the petition signature sheets that were circulated to voters. This action satisfies Article 4, Part 1, Section 1(9) of the Arizona Constitution and A.R.S. § 19-121(A)(3).

**¶9**     Arizona Revised Statutes § 19-111(A) (Supp. 2011) requires those seeking to initiate a law to file an application "on a form to be provided by the secretary of state" that "set[s] forth . . . the text of the proposed law." The question is whether the Committee satisfied this requirement to file with

the secretary of state "the text of the proposed . . . measure to be initiated." A.R.S. § 19-111. Consistent with Arizona's policy favoring initiatives, we review the filing to determine whether it "substantially complies with the applicable constitutional and statutory requirements." *Feldmeier*, 211 Ariz. at 447 ¶ 14, 123 P.3d at 183 (citing *Kromko*, 168 Ariz. at 58, 811 P.2d at 19).

**¶10** Secretary Bennett argues that the longstanding policy of his office is to file only paper copies and consider only the stamped paper version the "official" text of the initiated act. The CD version, he maintains, was merely accepted as a courtesy. But this "official paper" policy is not embodied in a rule or other written policy statement, nor is it set forth in the Secretary of State's Handbook that explains initiative procedures. *See* Office of Sec'y of State, *Initiative, Referendum, & Recall Handbook* 3-19 (2011), *available at* http://www.azsos.gov/election/IRR/Initiative_Referendum_and_Re call.pdf. The Arizona Constitution and statutes are also silent on this issue. Indeed, Secretary Bennett's counsel conceded in the trial court that the law does not define the term "official" copy.

**¶11** Secretary Bennett also contends that a proponent of an initiative cannot comply with the law by filing one version of an initiative and circulating another. He urges us to review

- 7 -

this issue not under the usual substantial compliance test, but under a new test that would make any substantive difference between the filed version and the circulated version fatal to an initiative. For this proposition, he cites *Nevadans for Nevada v. Beers*, 142 P.3d 339 (Nev. 2006), and the dissent in *Costa v. Superior Court*, 128 P.3d 675 (Cal. 2006).

¶12 We decline to change our longstanding test based on these cases. *Cf. Ross*, 228 Ariz. at 176–78 ¶¶ 10, 16, 19–21, 265 P.3d at 358–60 (declining to alter the substantial compliance standard in the recall context). First, the majority in *Costa* applied the substantial compliance test, not the test the Secretary espouses. Moreover, both cases are readily distinguishable. In each, the parties filed more than one form of initiative in the appropriate government office, but attached the unintended version to the petitions circulated for signature. *Nevadans*, 142 P.3d at 346; *Costa*, 128 P.3d at 678–79. Here, by contrast, the parties circulated the intended version so that all signers had the opportunity to review it before signing a petition.

¶13 Most importantly, we conclude that our current test strikes the appropriate balance between protecting our citizens' right to initiate laws and the integrity of the election process. *See Kromko*, 168 Ariz. at 57–58, 811 P.2d at 18–19 ("requirements as to the form and manner in which citizens

exercise their power of initiative should be liberally construed"); H.B. 167, 21st Leg., 1st Reg. Sess. (Ariz. 1953) (explaining the twin aims of what is now A.R.S. § 19-111(A)); *see also Costa*, 128 P.3d at 689 (balancing the same competing goals). For these reasons, we are not persuaded that we should change our standard for reviewing initiatives.

¶14 Under the substantial compliance standard, we conclude (and the parties agree) that the Committee's filing of differing versions of the initiative was a clerical error, done without any intent to defraud or deceive. And in the circumstances of this case, there was no significant danger that voters would be confused or deceived by the discrepancy between the paper and CD versions; the voters who signed the petitions had the opportunity, if they wished to take it, to study the correct provision.[1] Moreover, the Secretary of State's Office received and had on file the complete copy of the initiative circulated.

¶15 Nonetheless, the Committee created potential confusion and precipitated this lawsuit by submitting two differing versions of its proposed law. Secretary Bennett's Office posted the paper version on its website for potential voters to view. But the likelihood that it misled those who viewed it was mitigated both by the few visits to the page and by the fact

_____

[1] The record before the trial court showed no evidence of actual confusion.

that the link to the paper version carried the bold heading: "Unofficial."  Moreover, the error occurs on page twelve of fifteen dense, single-spaced pages, making it unlikely that even the most diligent reader would have found it.  Our conclusion is supported by the fact that the Joint Legislative Budget Committee's description in the publicity pamphlet does not mention the omitted funding allocations, even though the Secretary of State sent the JLBC the CD version of the measure after the discrepancy between the two versions was discovered. *See* Ariz. Sec'y of State, *What's on my Ballot?:  Arizona's General Election Guide* (2012), *available at* http://www.azsos.gov/election/2012/Info/PubPamphlet/english/e-book.pdf; Joint Legislative Budget Comm., Ariz. Legislature, *Fiscal Impact Estimates for Differing Versions of the Quality Education and Jobs Act Initiative (I-16-2012)* (2012), *available at* http://www.azleg.gov/jlbc/QualityEdandJobs-LegCouncil.pdf; *see also* Ariz. R. Evid. 201(b), (b)(2) (permitting court to take judicial notice).

**¶16**     The timing of the discovery and the opportunity to remedy the error also weigh heavily in our analysis.  *See Iman v. Bolin*, 98 Ariz. 358, 366, 404 P.2d 705, 710 (1965).  In *Iman*, the Secretary of State omitted two words in the publicity pamphlet describing an initiative and circulated a correction just one week before the election.  *Id.*  Despite the short

period before the election, we found that the Secretary of State had substantially complied with the statutory and constitutional requirements. *Id.*

**¶17** Here, the Secretary of State's Office discovered the error around June 18, 2012, more than one month before the August 26, 2012 deadline to print the ballot measure pamphlet. The Secretary of State's Office thus had sufficient advance notice to correct the error before it completed its statutorily required duties, including crafting the official ballot language and producing the publicity pamphlet.

**¶18** We therefore concluded that the Committee's initiative should go forward. Given the unique circumstances of this case, in which the full and correct copy of the initiative was provided to the Secretary of State's Office, the error was discovered with ample time to remedy it, the Committee attached its intended version to the petition signature sheets, and no fraud was intended or shown, we must respect the wishes of the more than 290,000 petition signers and protect the people's right to propose laws. *See, e.g., Kromko*, 168 Ariz. at 57–58, 811 P.2d at 18–19. We hold that the initiative substantially complied with A.R.S. § 19–111(A).

**¶19** We conclude with a few final notes. The trial court believed that Secretary Bennett, after discovering that two versions of the initiative had been submitted, had the

discretion simply to treat the correct version as the "official" version. The Secretary proceeded properly in accepting the submitted petitions and verifying the signatures while awaiting guidance from the courts.[2]

**¶20** Finally, we note that the trial transcript reflects that the trial judge expressed impatience with the Secretary of State's counsel, such as suggesting that the defense was frivolous.[3] Although we recognize the pressures to speed election cases through the courts, we disagree that the defense interposed was inconsequential or wasted judicial resources. This case presented an unusual circumstance not of the Secretary's making. He was placed in a difficult position by the Committee's filing of conflicting versions of its initiative. The Secretary proceeded properly in bringing this issue to the court.

### B. Attorneys' Fees

**¶21** The Committee seeks attorneys' fees pursuant to A.R.S. § 12-2030(A) (2003), which requires an award of attorneys' fees to a party that "prevails by an adjudication on the merits . . .

---

[2] To prevent future uncertainty, the Secretary may want to amend the Handbook or adopt rules providing guidance regarding the "official" version.

[3] At the end of the hearing, for example, the judge abruptly stated, "I don't see this as a complicated issue. I don't honestly see that we needed to be here." Rep. Tr. July 18, 2012 at 23.

against the state . . . to compel a state officer . . . to perform an act imposed by law as a duty on the officer." Because the Committee prevailed on the merits, it would be entitled to recover its attorneys' fees had Secretary Bennett been compelled by law to accept the CD version. But the law is silent on the Secretary's duty when a party files two different versions of an initiative. Because the law imposes no duty on the Secretary in this unusual circumstance caused by the Committee, we find that an award of fees under A.R.S. § 12-2030(A) is not mandatory. *See TIME v. Brewer*, 219 Ariz. 207, 213 ¶ 32, 196 P.3d 229, 235 (2008) (claim that Secretary erred in performing duties rather than refusing to perform mandatory duty "do[es] not clearly fall within [mandamus] statute"). We therefore direct each party to bear its own costs in this Court and in the trial court.

### III.  CONCLUSION

¶22      For the foregoing reasons, we affirm the judgment of the superior court.


                              _____
                              Rebecca White Berch, Chief Justice
CONCURRING:

_____
Scott Bales, Vice Chief Justice

_____
Robert M. Brutinel, Justice