IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

---

DEBRA ARRETT AND SHIRLEY LAMONNA,
*Plaintiffs/Appellants,*

*v.*

JULIE K. BOWER, ORO VALLEY TOWN CLERK,
*Defendant/Appellee,*

MICHELE REAGAN, ARIZONA SECRETARY OF STATE,
*Intervenor.*

No. 2 CA-CV 2015-0017
Filed March 12, 2015

---

Appeal from the Superior Court in Pima County
No. C20150346
The Honorable Gus Aragon, Judge

**AFFIRMED**

---

COUNSEL

Risner & Graham, Tucson
By William J. Risner
*Counsel for Plaintiffs/Appellants*

Curtis, Goodwin, Sullivan, Udall & Schwab, P.L.C., Phoenix
By Kelly Y. Schwab and Patricia E. Ronan

Tobin C. Sidles, Director of Town of Oro Valley
Legal Services, Oro Valley
*Counsel for Defendant/Appellee*

Mark Brnovich, Arizona Attorney General, Phoenix
James Driscoll-MacEachron, Assistant Attorney General
*Counsel for Intervenor*

---

**OPINION**

Presiding Judge Miller authored the opinion of the Court, in which
Chief Judge Eckerstrom and Judge Espinosa concurred.

---

M I L L E R, Presiding Judge:

**¶1**　　　In this expedited election appeal, we are asked to decide
whether Julie K. Bower, the Clerk of the Town of Oro Valley,
correctly rejected all signature sheets of a referendum petition filed
by appellant Shirley Lamonna, for lack of compliance with A.R.S.
§ 19-111(B), and whether the statute and its enforcement here is
constitutional. We conclude Lamonna failed to strictly comply with
§ 19-111(B), which requires the serial number issued for the
referendum petition to appear on both sides of each petition sheet,
and application of this and related statutes in this case is
constitutional. Bower therefore acted correctly and we affirm the
trial court's denial of Appellants' petition for a writ of mandamus.

**Factual and Procedural Background**

**¶2**　　　The material facts are undisputed. On December 17,
2014, the council of the Town of Oro Valley (the Town) and its
mayor adopted Resolution No. (R)14-66 (the Resolution), approving
the Town's acquisition of the El Conquistador Country Club, Golf,
and Tennis facilities (the Property) for one million dollars, for the

2

purpose of converting the Property into a community center.[1] The Resolution authorizes the Town's manager "to take such steps as are necessary to acquire" the Property. On December 18, 2014, Lamonna, as chairperson of "T.O.O.T.H. in OV," a political committee that opposed the Resolution, registered the committee and filed an application for a referendum petition serial number. Bower issued Lamonna serial number OVREF 14-01.

¶3        On January 15, 2015, Lamonna returned 249 petition sheets to the clerk's office, then completed and signed a receipt, which Bower also signed. Lamonna learned the petition sheets were defective because the Resolution number was used rather than the assigned serial number as required by § 19-111(B). *See also* A.R.S. § 19-101(B). Shortly thereafter, Bower rejected all sheets for OVREF 14-01 because none of them included the serial number. On January 23, 2015, Arrett[2] and Lamonna filed a statutory special action pursuant to A.R.S. § 19-122(A), seeking a writ of mandamus compelling Bower to accept the petition sheets Lamonna had submitted as part of OVREF 14-01, and to transmit the petitions to the Pima County Recorder for verification and further processing for placement of the referendum on the ballot for the next election. *See* A.R.S. § 19-121.01.

¶4        Bower filed an answer to the complaint and a motion to dismiss/motion for summary judgment. The trial court set the matter for an order to show cause hearing on February 3, 2015.

---

[1] The property consists of a 31,475-square-foot building, a 5,600–square-foot building, approximately 324 acres of land, thirty-one tennis courts, two swimming pools, and forty-five holes of golf.

[2] Arrett also applied for and received a referendum serial number, OVREF 15-01, pertaining to the Resolution, but Appellants clarified at oral argument that this petition is not the subject of the appeal because it contained the required serial number. Instead, Arrett is a party to this action by virtue of her status as a resident of the Town and her opposition to the Resolution. Bower also rejected OVREF 15-01 for having insufficient signatures. Appellants are not challenging that determination.

After Bower and Lamonna testified at that hearing, the parties submitted the matter to the court based on their testimony, the pleadings, memoranda, and exhibits. The court denied the motion to dismiss at the end of the hearing but took the matter under advisement, issuing its order denying the request for a writ of mandamus the following day. The court found the petition sheets did not comply with § 19-111(B), Bower had acted in accordance with the law in rejecting them, and Arrett and Lamonna had not sustained their burden of establishing they were entitled to special-action relief. The court denied Appellants' request to stay its order.

**¶5**　　　　Appellants' accelerated appeal pursuant to Rule 10, Ariz. R. Civ. App. P., followed. They filed a motion in this court asking us to stay the trial court's order and to enjoin the Town from further negotiations for or finalization of its purchase of the property, which was expected to occur sometime in March. We denied the request for a stay.

## Discussion

**¶6**　　　　Appellants contend the petition sheets complied with all requirements provided in article IV, pt. 1, § 1, of the Arizona Constitution, particularly § 1(9). Characterizing § 19-111(B) as "non-substantive," they assert the "undisputed error" did not invalidate the sheets. Appellants argue § 19-111(B) is not among the "helpful" kinds of limited provisions the legislature may enact to facilitate the important constitutional right of the electorate to initiative and referendum, and is, in fact, unconstitutional. They also challenge the application of a strict compliance standard to referenda, suggesting the statute is vague on its face or as applied here.[3]

---

[3]Appellants' arguments in their opening brief posit facial and as-applied challenges to the constitutionality of § 19-111(B). In their reply to Bower's answering brief and their response to intervenor Secretary of State's brief, they limit the challenge to the application of the statutes in these circumstances. However, they returned to their dual challenge when they asserted during oral argument that the failure to include a serial number should never be fatal to a

¶7        "We review a trial court's decision on a request for injunctive or mandamus relief under § 19-122 for an abuse of discretion." *Parker v. City of Tucson*, 233 Ariz. 422, ¶ 11, 314 P.3d 100, 106 (App. 2013).  An abuse of discretion includes an error in the interpretation or application of the law. *See id.*  This appeal raises questions regarding the interpretation and application of election statutes and Arizona's constitution; we review these questions of law de novo. *Pedersen v. Bennett*, 230 Ariz. 556, ¶ 6, 288 P.3d 760, 762 (2012).

¶8        "Our primary purpose in interpreting a statute is to give effect to the legislature's intent." *Parker*, 233 Ariz. 422, ¶ 12, 314 P.3d at 106.  A statute's plain language is the best reflection of the legislature's intent; therefore, when the language "is clear and unambiguous we need look no further than the statute's terms to determine its meaning and do not employ other principles of statutory construction." *Id.*  These principles of construction apply to the interpretation of Arizona's constitution, requiring us to interpret its provisions "to effectuate the intent of those who framed [them]." *Jett v. City of Tucson*, 180 Ariz. 115, 119, 882 P.2d 426, 430 (1994); *see also Tumacacori Mission Land Dev., Ltd. v. Union Pac. R.R.*, 228 Ariz. 100, ¶ 6, 263 P.3d 649, 651 (App. 2011) (if language of constitutional provision is "unambiguous, we generally must follow the text as written").

¶9        The Arizona Constitution reserves the power of initiative and referendum to the qualified electors of cities, towns, and counties.  Ariz. Const. art. IV, pt. 1, § 1(8).  This court recognizes the importance of and "respect[s] the citizens' constitutional right to challenge a government's legislative actions by referring a duly enacted measure to the ballot for a vote." *Sklar v. Town of Fountain Hills*, 220 Ariz. 449, ¶ 8, 207 P.3d 702, 705 (App. 2008).  Indeed, the courts of this state "have long recognized the strong public policy favoring the initiative and referendum." *Van Riper v. Threadgill*, 183 Ariz. 580, 582, 905 P.2d 589, 591 (App. 1995), *citing W. Devcor, Inc. v. City of Scottsdale*, 168 Ariz. 426, 428, 814 P.2d 767, 769 (1991).  The

referendum petition, which effectively positions the argument as a facial challenge.

right of initiative and referendum has been "characterized . . . as 'vital,' and one so important to the authors of our constitution that they included sufficient machinery in the constitution to make the right self-executing." *Id.*, quoting *Crozier v. Frohmiller*, 65 Ariz. 296, 298, 179 P.2d 445, 447 (1947).

**¶10**      Arizona's constitution includes certain requirements as to the form and contents of initiative and referendum petitions. Ariz. Const. art. IV, pt. 1, § 1(9). As Appellants correctly point out, article IV, part 1, is self-executing. *See* Ariz. Const. art. IV, pt. 1, § 1(16). But as they concede, the fact that the constitutional provisions are self-executing does not preclude the legislature from enacting laws pertaining to referenda and initiatives. *Direct Sellers Ass'n v. McBrayer*, 109 Ariz. 3, 5, 503 P.2d 951, 953 (1972). Indeed, the constitution expressly permits localities to "prescribe the manner of exercising said powers," and to supplement the provisions of the constitution as long as they do so "within the restrictions of general laws." *See* Ariz. Const. art. IV, pt. 1, § 1(8). Our courts repeatedly have recognized the power of the legislature to regulate the referendum process. *See, e.g.*, *Cottonwood Dev. v. Foothills Area Coal. of Tucson, Inc.*, 134 Ariz. 46, 49, 653 P.2d 694, 697 (1982); *Direct Sellers*, 109 Ariz. at 5, 503 P.2d at 953; *Lawrence v. Jones*, 199 Ariz. 446, ¶¶ 7-9, 18 P.3d 1245, 1248-49 (App. 2001). "If such legislation does not unreasonably hinder or restrict the constitutional provision and if the legislation reasonably supplements the constitutional purpose, then the legislation may stand." *Direct Sellers*, 109 Ariz. at 5, 503 P.2d at 953 (upholding validity of statute requiring circulators of referendum petitions be qualified electors, even absent constitutional requirement).

**¶11**      The legislature initially adopted laws relating to initiative and referendum in 1953, "prescribing the form, verification and method of circulation of petitions." 1953 Ariz. Sess. Laws, ch. 82. The stated purpose of these laws was to "further implement[] the provisions of the Constitution," prevent fraud and abuse of the process, and "safeguard to the people their right of initiative and referendum in its original concept." 1953 Ariz. Sess. Laws, ch. 82, § 1. In 1989, the legislature amended existing statutes and enacted new provisions relating to initiative, referendum, and recall

elections. 1989 Ariz. Sess. Laws, ch. 10. It expressly stated the purpose of this legislation:

> The right of initiative and referendum shall be broadly construed. If there is doubt about requirements of ordinances, charters, statutes or the constitution concerning only the form and manner in which the power of an initiative or referendum should be exercised, these requirements shall be broadly construed, and the effect of a failure to comply with these requirements shall not destroy the presumption of validity of citizens' signatures, petitions or the initiated or referred measure, unless the ordinance, charter, statute or constitution expressly and explicitly makes any fatal departure from the terms of the law.

1989 Ariz. Sess. Laws, ch. 10, § 1.

¶12 The substance of § 19-111 was contained in the various statutes enacted in 1953 that adopted portions of the 1939 Arizona Code, specifically, § 60-103, which required the issuance of a serial number. 1953 Ariz. Sess. Laws, ch. 82, § 3. Section 19-111(B) currently provides as follows:

> On receipt of the application, the secretary of state [town clerk[4]] shall assign an official serial number to the petition, **which number shall appear in the lower right-hand corner of each side of each copy**

---

[4]The statutes regarding initiative and referendum apply to cities, counties and towns, unless expressly provided otherwise in that article. A.R.S. § 19-141(A) ("[D]uties required of the secretary of state as to state legislation shall be performed in connection with such legislation by the city or town clerk . . . [or] officer in charge of elections.").

> thereof, and issue that number to the applicant. The secretary of state shall assign numbers to petitions in numerical sequence, and a record shall be maintained in the secretary of state's office of each application received and of the numbers assigned and issued to the applicant.

(Emphasis added.) The significance of the serial number is reinforced in other statutes. Section 19-101(B), A.R.S., requires each petition sheet include this admonition on the top of the sheet: "It is unlawful to sign this petition before it has a serial number." Most important, § 19-121.01(A)(1)(c) requires the secretary of state to remove "[t]hose sheets not bearing the petition serial number in the lower right-hand corner of each side."

¶13        Appellants argue the serial number requirement under § 19-111(B), unlike requirements of other statutes enacted to facilitate the initiative or referendum process, "is meaningless to petition signers and practically useless to town clerks." They suggest the number of the Resolution, which they placed on the petition sheets, is "more meaningful" to Oro Valley residents who sign the petition because it makes clear the signatures relate to that Resolution. And, they argue, the "statute does not reveal or explain the purpose of the serial number which appears to be clerical and not citizen informative or substantive." Appellants essentially contend the statute unconstitutionally exceeds the permissible scope of legislation in this area because it would not assist the electors in deciding whether to sign the petition; it does not "'supplement[]' the constitutional purpose" and, it is unduly burdensome. They conclude that its application divested Oro Valley residents of their right to referendum. As discussed below, this view is unnecessarily narrow with respect to the effect and purpose of § 19-111(B).

¶14        We first address Bower's threshold argument that the constitutional challenge was waived because it was not sufficiently developed in the trial court. The challenge was raised briefly, albeit broadly and not with the specificity they have raised on appeal. Nevertheless, we think the argument was sufficiently preserved for appellate review and we will address it given the importance of the

right involved.  *See Harris v. City of Bisbee*, 219 Ariz. 36, n.3, 192 P.3d 162, 166 n.3 (App. 2008) (addressing issues that could be regarded as waived because court has duty to determine legal sufficiency of referendum petitions and "whether they comply strictly with *all* relevant statutory and constitutional provisions").

**¶15**　　　Bower further and correctly asserts that Appellants failed to comply with A.R.S. § 12-1841, which requires notification to the Arizona Attorney General, the Speaker of the House of Representatives, and the President of the Senate when a party challenges as unconstitutional any "state statute, ordinance, franchise or rule."  We have, however, permitted the Secretary of State, represented by the Attorney General, to intervene and have considered its brief and oral arguments defending the constitutionality of these statutes.

**¶16**　　　The Secretary of State asserts that any ruling negating the serial number requirement "threatens the integrity of elections far beyond this single local referendum" and "would undermine the ability of the Secretary to ensure the authenticity and validity of petitions for initiatives and referenda on a statewide level."  The Secretary's position stands on the constitutional duty to fulfill the duties prescribed by the legislature, which include general oversight of statewide referenda.  *See* Ariz. Const. art. V, § 9; A.R.S. §§ 19-121.01, 41-121(9).  As such, the Secretary's arguments have the same force, if not greater, than those advanced by Bower.

**¶17**　　　As the Secretary correctly observes, the serial number requirement has existed for more than sixty years, and we agree it is a "critical tool for ensuring the fairness and integrity of the initiative and referendum process."  The Secretary is also correct that the legislative history emphasizes the importance of the serial number to the process and refutes Appellants' contention that it is merely clerical and meaningless.  Individual sheets may become separated and without such identification, it would be difficult, if not impossible, to determine with which petition the signatures have been submitted.  Indeed, Bower testified at the hearing about the importance of this system of identification in "track[ing]" petitions and "keep[ing] the petitions separate," particularly in the circumstances such as here, where multiple petitions were filed on a

single resolution; and, she processed the two petitions at the same time. As Bower emphasized during oral argument before this court, the serial number also serves as notice and assurance to the voters who sign the petition that it is official and has been procured in accordance with the statutory requirements for the electoral process. The requirement "does not unreasonably hinder or restrict the constitutional provision and . . . reasonably supplements the constitutional purpose." *Direct Sellers*, 109 Ariz. at 5, 503 P.2d at 953; *see also State ex rel. Montgomery v. Mathis*, 231 Ariz. 103, ¶¶ 38-39, 290 P.3d 1226, 1238 (App. 2012). It is designed to safeguard and maintain the integrity of this important constitutional right, not to inhibit or discourage its exercise.

¶18 That the power of referendum is not utilized often, an assertion the Secretary of State refutes, or that the referendum petition Lamonna filed was the first in the Town of Oro Valley in years and the only one filed in 2014 in connection with the Resolution, does not render the statute meaningless. Nor does it dispense with the requirements of the statutes. The Secretary asserts that without the serial number, the opportunities for fraud are "self-evident" and there would be no means of assuring accurate counting of signatures. Moreover, in the context of statewide referenda, there may be multiple or amended petitions, for which the serial number requirement would be essential to maintaining the integrity of the process. As we previously stated, "public policy favors uniformity in the referral process—uniformity the statutory framework was intended to provide." *Fidelity Nat. Title Co. v. Town of Marana*, 220 Ariz. 247, ¶ 13, 204 P.3d 1096, 1099 (App. 2009). The process established by the legislature was not intended to be implemented differently throughout the state, with less rigorous adherence required in cities or towns of smaller populations where, perhaps, fewer petitions are filed.

¶19 Appellants also contend the serial number requirement is vague and ambiguous. But their argument is based more on the fact that Lamonna made a mistake. Lamonna admitted she had made an "error" by using the resolution number rather than the serial number. She was not confused by Bower, indeed, she expressly testified she "never claimed that the error was the clerk's."

The testimony and exhibits establish Bower provided Lamonna with a handbook, which contained instructions for filing an application and obtaining a serial number. The handbook states in the section entitled, "Petition Format," that the serial number had to appear "on lower right hand corner on front <u>and</u> back of petition." The application for a serial number makes clear that the number is the one issued by the Town clerk, as do the statutes. And consistent with § 19-101(B), each petition sheet displayed the warning, "It is unlawful to sign this petition before it has a serial number." More importantly, nothing in the plain language of § 19-111 confuses the official serial number, the number issued by the Town clerk, with the number that identifies the subject legislation. Even when a person has received erroneous advice from a governmental official, it is the responsibility of the person challenging an ordinance, resolution, or statute "to comply with the statutory requirements for filing a referendum petition." *Fidelity*, 220 Ariz. 247, ¶ 14, 204 P.3d at 1099.

**¶20** Appellants also contend § 19-111 hinders rather than supplements the constitutional purpose of the referendum. In that sense, they argue that it unnecessarily burdens them, relying on *Direct Sellers*, 109 Ariz. at 5, 503 P.2d at 953. There is no evidence in the record, however, that the serial number provided by Bower to Lamonna was hidden or obscured. Instead, this was an unfortunate mistake for which Appellants attribute no blame to the clerk. Additionally, it appears to be a very rare occurrence—the parties were aware of no other case involving a missing serial number.

**¶21** Appellants' final two arguments are interrelated. They urge us to question the wisdom of requiring strict as opposed to substantial compliance with respect to referendum petitions. And, they argue the term "shall" in §§ 19-111(B), 19-121(A)(2), and 19-121.01(A)(1)(c) is directory rather than mandatory.

**¶22** Our supreme court repeatedly has imposed a strict compliance standard on referendum petitions under the Arizona Constitution and statutes. *Feldmeier v. Watson*, 211 Ariz. 444, ¶ 12, 123 P.3d 180, 183 (2005); *W. Devcor*, 168 Ariz. at 429, 814 P.2d at 770; *Cottonwood Dev.*, 134 Ariz. at 49, 653 P.2d at 697. Applying supreme court precedent, this court has done so as well. *Sklar*, 220 Ariz. 449,

¶ 9, 207 P.3d at 705; *Harris*, 219 Ariz. 36, ¶ 13, 192 P.3d at 166.  In contrast, Arizona courts follow a rule of "substantial compliance" with respect to the form of initiative petitions.  *Feldmeier*, 211 Ariz. 44, ¶¶ 14-15, 123 P.3d at 183-84; *see also Pedersen*, 230 Ariz. 556, ¶ 9, 288 P.3d at 762.  The supreme court observed in *Direct Sellers*:

> "The right to suspend, and possibly to revoke, as given by the referendum . . . is an extraordinary power which ought not unreasonably to be restricted or enlarged by construction.  It must be confined within the reasonable limits fixed by the charter (statute).  The charter (statute) prescribes what the petition for referendum shall contain, how it shall be signed, and by whom it shall be verified.  These provisions are intended to guard the integrity both of the proceeding and of the petition.  Where a power so great as the suspension of an ordinance or of a law is vested in a minority, the safeguards provided by law against its irregular or fraudulent exercise should be carefully maintained."

109 Ariz. at 5-6, 503 P.2d at 953-54, *quoting AAD Temple Bldg. Ass'n v. Duluth*, 160 N.W. 682, 684-85 (1916); *see also Cottonwood Dev.*, 134 Ariz. at 48-49, 653 P.2d at 696-97 (reciting same principle and noting successful referendum undermines majority will by suspending application of referred statute or ordinance until electorate can vote at next general election).  To the extent Appellants request that we change the standard to substantial compliance, we are without authority to do so.  *See City of Phx. v. Leroy's Liquors, Inc.*, 177 Ariz. 375, 378, 868 P.2d 958, 961 (App. 1993) (court of appeals has no authority to overrule, modify, or disregard our supreme court).

¶23        This standard of strict compliance "requires nearly perfect compliance with constitutional and statutory referendum requirements."  *Comm. for Pres. of Established Neighborhoods v. Riffel*, 213 Ariz. 247, ¶ 6, 141 P.3d 422, 424 (App. 2006).  Appellants did not strictly comply here, and Bower was required by the plain and

unambiguous terms of the statutes to remove the petition sheets and process them no further.[5]

¶24    We also reject Appellants' argument that the term "shall" in the relevant statutes is "directory" rather than "mandatory." None of the cases they rely on is an election case involving referendum. *See, e.g.*, *Ariz. Downs v. Ariz. Horsemen's Found.*, 130 Ariz. 550, 554-55, 637 P.2d 1053, 1057-58 (1981) (interpreting term "shall" in A.R.S. § 5-110(A), statute regulating horse racing, as directory and indicating "desirability, preference, or permission" after viewing statute "as a whole" to determine its constitutionality); *Forino v. Ariz. Dep't of Transp.*, 191 Ariz. 77, 80-81, 952 P.2d 315, 318-19 (App. 1997) (determining time period for conducting driver's license suspension hearing before Arizona Department of Transportation under Arizona's implied consent statute directory not mandatory, and failure to hold hearing within period did not divest agency of jurisdiction absent showing of prejudice). The plain meaning of "shall," particularly in this context is mandatory. Nothing in the statutory scheme, viewed as a whole, suggests Bower had any choice but to remove petition sheets in which the serial number she had been required to issue to Lamonna did not appear on the bottom right of the front and back. Section 19-111(B) provides a serial number "shall [be] assign[ed]," that number "shall appear in the lower right-hand corner of each side of each copy thereof," § 19-101(B) requires each petition sheet to display a warning that "'[i]t is unlawful to sign this petition before it has a serial number,'" a warning the petition sheets did have here,

---

[5] This court has "attempted to harmonize the 'broad construction' legislative directive found in § 19-111 with the existing case law mandating 'strict construction.'" *Sklar*, 220 Ariz. 449, ¶ 11, 207 P.3d at 705-06, *citing Lawrence*, 199 Ariz. 446, ¶ 3, 18 P.3d at 1247. In so doing, we demand strict compliance with statutory requirements but construe broadly the terms used in the statute to identify the requirement. *Id.* Section 19-111(B) makes it clear that the serial number is the one used by the election official and that it is the number that must appear on both sides of each petition sheet. There can be no other construction of this unambiguous term.

and pursuant to § 19-121.01(A)(1)(c), the secretary of state "shall" remove any sheets that do not bear the serial number.

**¶25** Appellants suggest this court's decision in *Harris* supports their argument that the word "shall" is directory. Their reliance on that case, however, is misplaced. In *Harris*, we acknowledged that referenda are subject to a strict compliance standard. 219 Ariz. 36, ¶ 13, 192 P.3d at 166. But, we noted, consistent with the strong public policy in this state that favors facilitating the referendum process, "our courts have held that, unless the failure to comply strictly with a statutory requirement is expressly made fatal, that failure 'does not make the signatures appearing on the petitions null and void, but merely destroys their presumption of validity.'" *Id.* ¶¶ 14, 21, *quoting Direct Sellers*, 109 Ariz. at 5, 503 P.2d at 953. This court found that although the presumption of validity had been destroyed by the lack of strict compliance in two primary respects, it had been restored as to some of the signatures. *Id.* ¶¶ 21-22. Section 19-121.01(A)(1)(c), on its face, and when considered together with related statutes and in light of the purpose served by the use of a serial number, makes the lack of compliance fatal; it requires the removal of sheets that do not bear the serial number. *Cf. Israel v. Town of Cave Creek*, 196 Ariz. 150, n.7, 993 P.2d 1114, 1119 n.7 (App. 1999) (noting "failure to make a required organizational listing does not, strictly speaking, invalidate" application under § 19-111(A) but under "A.R.S. § 19-114(B), it invalidates any signatures obtained on referendum petitions circulated pursuant to an insufficient application"; effect is same because "it renders an insufficient application a futility").

**¶26** Similarly, in *Forszt v. Rodriguez*, 212 Ariz. 263, ¶ 11, 130 P.3d 538, 540 (App. 2006), we observed that "failure to strictly comply with a procedural statutory requirement does not always necessitate that the referendum petition be declared void" in the absence of a statute so stating. We concluded that failure to file the petition sheets with a copy of the subject ordinance attached to each sheet as required by the statute did not, in the "specific circumstances" of that case, "compel the trial court to declare the signatures be declared void," because it was not disputed the ordinance had been attached when the sheets were signed. *Id.*

¶¶ 14-15.   In *Forszt*, the petition complied with all statutory requirements throughout the process; further, the ordinance was attached to each petition sheet and was not detached until after the sheets were signed.  *Id.* ¶¶ 15-16.  Thus, the trial court had not erred by finding the presumption of validity, destroyed by the lack of strict compliance, had been restored.  *Id.* ¶ 15.

**¶27**      Important to our decision in *Forszt*, however, was the fact that we could "conceive of no independent purpose for the requirement that signatures be *filed* with the ordinance attached other than to confirm that they have been so *circulated*."  *Id.* ¶ 17.  We noted, in that regard, that "§ 19-121.01(A)(1)(b) requires the clerk to detach any copies of the ordinance from the signature sheets immediately upon confirming that they were submitted attached—a provision that suggests the legislature lacked any additional purpose for requiring that the ordinance be attached when the petition is filed."  *Id.*

**¶28**      Here, however, the presumption of validity with respect to the petition could not be restored because the petition was never correct, not from the moment Lamonna obtained it and not at the time the signatures were obtained.  Perhaps more importantly, there is an independent purpose for requiring each sheet to display the serial number that was issued by the person charged with overseeing the election process.  As we have made clear, the requirement is of statewide importance to maintaining the integrity of the referendum process.  It provides notice to the person signing that it is an official petition, it protects against fraud, and it attempts to ensure accuracy in the referendum process by demanding, not suggesting, a systematic, fail-safe means of identifying individual petition sheets with a specific referendum petition.

**Disposition**

**¶29**      We acknowledge that the right of the citizens of this state to "challenge a government's legislative actions by referring a duly enacted measure to the ballot for a vote," is an important constitutional right, one that must be respected and safeguarded by our courts and our legislature.  *Sklar*, 220 Ariz. 449, ¶ 8, 207 P.3d at 705.  And as this court has noted before, "[w]e are well aware that

. . . seemingly straightforward statutory requirements for pursuing a referendum are at times mystifying," even to those directly involved in the process. *Fidelity Nat. Title Co.*, 220 Ariz. 247, ¶ 15, 204 P.3d at 1100. This case and others like it illustrate "harsh consequences . . . can occur when the statutory framework is not followed." *Id.* ¶ 14. But the clear, mandatory requirements of § 19-111(B), together with the related provisions of §§ 19-121(A)(2) and 19-121.01(A)(1)(c), serves the permissible and important purpose of facilitating and protecting, not burdening, the referendum process. Failure to follow strictly the requirements of this provision required the removal of all defective petition sheets. We, therefore, affirm the trial court's order denying Appellants' request for a writ of mandamus. We disagree, however, with Bower's contention that this appeal was frivolous or brought in bad faith and without substantial justification, and therefore deny her request for attorney fees pursuant to A.R.S. § 12-349 and Rule 25, Ariz. R. Civ. App. P.